WYZANSKI, Senior District Judge.
These four appeals raise the issue whether the district court erred in confirming a plan of reorganization of Continental Investment Corporation [“CIC”], a solvent debtor involved in proceedings pursuant to chapter X of the Bankruptcy Act, 11 U.S.C. ch. X § 501 et seq., because the plan did not provide that CIC’s convertible debenture holders or its straight debenture holders should receive payment of interest on overdue instalments of interest.
In 1970 and 1973 CIC issued two classes of debentures which may fairly be summarized by us as follows:
1. 9% Convertible Subordinated Debentures [“Convertible Debentures”] due November 1,1990 had been issued by CIC pursuant to an Indenture dated November 1, 1970 [“1970 Indenture”]. The 1970 Indenture provides for 9% interest to be paid semi-annually on November 1 and May 1 of each year and for the payment of interest both on principal and on any overdue instalments of interest at the annual- rate of 9%. It also provides that “[t]his Indenture and each Debenture shall be deemed to be a contract made under the laws of the Commonwealth of Massachusetts, and for all purposes shall be construed in accordance with the laws of said State.”
2. 9% Subordinated Debentures [“Straight Debentures”] due November 1, 1985 had been issued by CIC pursuant to an Indenture dated March 1, 1973 [“1973 Indenture”]. The 1973 Indenture pro *266 vides for 9% interest to be paid semi-annually on November 1 and May 1 of each year and for the payment of interest both on principal and on any overdue instalments of interest at the annual rate of 9%. It also provides that “[t]his Indenture and each Debenture shall be deemed to be a contract made under the laws of the State of New York, and for all purposes shall be construed in accordance with the laws of said State.”
The provisions for payment of interest on overdue instalments of interest (referred to in the above two paragraphs) are virtually identical.
CIC made its last interest payments to the holders of each class of debentures on May 1,1974. CIC is in default on payments due on November 1, 1974 and thereafter.
On April 10, 1976 CIC filed a petition under chapter XI of the Bankruptcy Act, former 11 U.S.C. § 701 et seq. On May 7, 1976 First National Bank of Boston, “pursuant to Section 8.02”[1] of the 1970 Indenture, filed a proof of claim for the holders of convertible debentures. On May 24, 1976 Bankers Trust Co. filed a proof of claim for all holders of straight debentures “in accordance with the provisions of the” 1973 Indenture.
On June 5,1981 the Trustee in bankruptcy proposed a plan of reorganization of CIC [the “Trustee’s Plan”] providing that the Trustee shall (1) sell for $166 million all of the stock of the debtor, CIC, to Liberty National Insurance Holding Company [“Liberty”], (2) pay all administrative claims, (3) pay in 1981 to each debenture holder of each class of debentures the full amount of the principal of each debenture plus all overdue instalments of interest, but nothing on account of interest on the overdue instalments, (4) pay to each ordinary creditor the principal of his claim plus “interest if the creditor would have been entitled to such interest under applicable general laws” [Plan 119.6, A.125], (5) have an option to purchase from Liberty for $14 million all the stock of Con-Vest, a subsidiary of CIC: and (6) distribute to each stockholder of CIC his ratable part of any Con-Vest stock bought by the Trustee and to pay him his ratable part of the cash balance of the proceeds of the sale of CIC assets to Liberty.
Both classes of debenture holders objected to the Trustee’s Plan on the ground that it failed to meet their claims for interest on the overdue instalments of interest on the debentures, and the straight debenture holders objected on the further ground that it failed to allow them post-petition interest on the so-called “accrued” pre-petition interest on the unpaid 1974 and 1975 instalments of interest.
The district court denied the claims and overruled the objections. With respect to the straight debenture holders’ contentions, the court gave two reasons for its denial: *267 (1) that the provision for payment of interest on the overdue instalments of interest is void under New York law, and (2) that the enforcement of a provision for interest on overdue instalments of interest would not be fair and equitable inasmuch as the principal amount of each debenture will be paid 4 years in advance of the 1985 maturity date, and the pre-paid principal may be invested for 4 years in United States Treasury obligations due in 1985 paying over 15%, instead of the 9% rate which would have been payable on a straight debenture due in 1985. With respect to the convertible debenture holders’ claims, the court gave as the reason for its denial that the maturity date of those convertible debentures was 1990 and the pre-paid principal may be invested in Treasury obligations paying over 13% instead of the 9% rate which would have been payable on a convertible debenture due in 1990.
On September 16, 1981 the court, after finding CIC solvent,[2] confirmed the Trustee’s Plan. Since that date the Plan has been substantially consummated; but the Trustee has retained over $3 million to meet the present appellants’ claims if they should prevail.
The four appeals before us raise in different contexts the question whether the district court properly found that the Plan was, within the meaning of 11 U.S.C. § 621(2), “fair and equitable” inasmuch as the Plan did not provide for the payment of interest on unpaid instalments of interest due on the two classes of CIC debentures. The straight debenture holders also raise the question whether the plan is unfair in not providing for the payment of pre-petition and post-petition interest on the unpaid 1974 and 1975 instalments of interest.
We consider first the appeal of the First National Bank of Boston [“FNBB”] which, as trustee under the 1970 Indenture, presented to the district court the claims of holders of convertible debentures to be paid 9% interest on the unpaid instalments of interest.
FNBB’s proof of claim, as interpreted by the district court,[3] and by us, presents two types of claims: claims for pre-petition interest on interest (that is, interest up to April 30, 1976 on the three instalments of interest due November 1,1974, May 1,1975, and November 1, 1975 which were unpaid on April 30, 1976 when the petition was filed) and claims for post-petition interest (that is, (1) interest beginning April 30, 1976 on the three instalments due in 1974 and 1975 — but not including interest on the unpaid pre-petition interest on those three instalments (see footnote 3, supra) — together with (2) interest on the instalments of *268 interest which fell due after the petition, and of which the first was the May 1, 1976 instalment).
As an introduction to our analysis of FNBB’s two-fold claim, we note that the conflict-of-law problems with respect to pre-petition claims are different from the conflict-of-law problems with respect to post-petition claims.
Pre-petition interest is governed by state law, absent an overruling federal law. In Vanston Bondholders Protective Committee v. Green, 329 U.S. 156, 161, 67 S.Ct. 237, 239, 91 L.Ed. 162 (1946) Justice Black, writing for a majority of the court, expressed the principle thus: “What claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition in bankruptcy is filed is a question which, in the absence of overruling federal law, is to be determined by reference to state law.” In the same case, Justice Frankfurter, writing a concurring opinion for himself and Justices Jackson and Burton, expressed the same principle thus at p. 170, 67 S.Ct. at p. 161: “no obligation finds its way into a bankruptcy court unless, by the law of the State where the acts constituting a transaction occur, the legal consequence of such a transaction is an obligation to pay.” State law may allow pre-petition interest either because the parties have so contracted or because under state rules governing contracts a person who breaks a contract for a liquidated sum must pay as part of the damages interest from the date of the breach. See Manganaro Drywall, Inc. v. Penn-Simon Construction Co., 357 Mass. 653, 657-658, 260 N.E.2d 182 (1970); In re International Hydro-Electric System, 101 F.Supp. 222 (D.Mass.1951); Restatement (Second) Contracts § 354 Comment c.
Post-petition interest questions arise in two different situations. (1) If there is a contract between the creditor and the bankrupt either for interest on the principal or for interest on unpaid interest on the principal, and if this is a valid contract under the law of the State which governs the contract, then the federal bankruptcy law determines whether the contract is enforceable in bankruptcy. As Justice Black stated in Vanston, 329 U.S. at p. 163, 67 S.Ct. at p. 240: “When and under what circumstances federal courts will allow interest on claims against debtors’ estates being administered by them has long been decided by federal law.” Justice Frankfurter in Vanston, p. 171, 67 S.Ct. p. 162 noted: “We do not reach considerations of policy in bankruptcy administration until there are rights, created by applicable local law, to be recognized.” (2) If the creditor and the bankrupt have not made a valid contract as to interest, nonetheless, the the bankruptcy court has the power to award interest on the theory that there has been a detention by the bankruptcy court of monies due. However, as we shall later explain, the bankruptcy court usually does not make such awards unless the alleged bankrupt is solvent. United States v. Bass, 271 F.2d 129, 130 (9th Cir. 1959). See New York v. Saper, 336 U.S. 328, 330 n.7, 69 S.Ct. 554, 555 n.7, 93 L.Ed. 710 (1949).
With respect to both the pre-petition and the post-petition claims of the convertible debenture holders, the following two matters are undisputed: (1) insofar as state law governs the case, it is the law of Massachusetts which controls, and (2) under Massachusetts law a contractual provision that interest shall be paid on an instalment of interest not seasonably paid is valid. Manganaro Drywall, Inc. v. Penn-Simon Construct Co. and In re International HydroElectric System, both supra.
If CIC were insolvent, the indenture provision allowing the post-petition interest on the instalments which fell due either before or after the petition was filed would not be enforceable, regardless of State law. Vanston, 329 U.S. p. 159 lines 23-24, pp. 163-166, 67 S.Ct. p. 238, pp. 240-41. The federal bankruptcy rule, derived from English law, provides that in the case of insolvent debtors interest, whether stipulated in a contract or not, stops at the moment the petition in bankruptcy is filed. Sexton v. Dreyfus, 219 U.S. 339, 344, 31 S.Ct. 256, 257, 55 L.Ed. 244 (1911); Ameri *269 can Iron Co. v. Seaboard Air Line, 233 U.S. 261, 267-268, 34 S.Ct. 502, 504-05, 58 L.Ed. 949 (1914). See New York v. Saper, 336 U.S. 328, 330, 69 S.Ct. 554, 555, 93 L.Ed. 710 (1949). Two reasons are given for the rule: (1) interest payments are penalties or damages assessed against the debtor for his detention of the creditor’s money (see Vanston, 329 U.S. pp. 166, 171, 67 S.Ct. pp. 241, 262) and therefore it would be unjust to allow the creditor to recover such penalties or damages from other creditors who were not to blame for the detention; and (2) the bankruptcy court itself, not the debtor, detained the money after the petition was filed.
But with respect to post-petition interest on both the unpaid instalments which fell due before, and the unpaid instalments which fell due after, the petition, the legal situation is different when the supposed bankrupt proves to be solvent. Where the debtor is solvent, the bankruptcy rule is that where there is a contractual provision, valid under state law, providing for interest on unpaid instalments of interest, the bankruptcy court will enforce the contractual provision with respect to both instalments due before and instalments due after the petition was filed. Ruskin v. Griffiths, 269 F.2d 827, 830-832 (2nd Cir. 1959), cert. den. 361 U.S. 947, 80 S.Ct. 403, 4 L.Ed.2d 381 (1960); In re Hydro-Electric System, supra, 224. This rule is fair and equitable inasmuch as the solvent debtor’s estate will have been enriched by the bankruptcy trustee’s use of money which the debtor had promised to pay promptly to the creditor, and, correspondingly, the creditor will have been deprived of the opportunity to use the money to his advantage. Moreover, the rule does not in any way affect any creditor other than the claimant of interest on interest. Finally, the rule is in harmony with the settled English and American law that when an alleged bankrupt is proved solvent, the creditors are entitled to receive post-petition interest before any surplus reverts to the debtor. New York v. Saper, 336 U.S. 328, 330 n.7, 69 S.Ct. 554, 555 n.7, 93 L.Ed. 710 (1949); United States v. Bass, 271 F.2d 129, 130 (9th Cir. 1959); Littleton v. Kincaid, 179 F.2d 848, 27 A.L.R.2d 572 (4th Cir. 1950).
The district court, while assuming that a convertible debenture holder had a contractual right to a cash payment of interest on interest, required him to take as a substitute for that contractual right a different right — the right to a 1981 payment of the principal of the debenture which, had there been no default in payment of interest and no petition in bankruptcy, would not have matured until 1990.
FNBB contends that in the case of a solvent debtor the court lacked power to compel the acceptance of any substitute, that if the court had such power what the court offered gave nothing to the convertible debenture holders which they did not already have, and that therefore the plan did not meet the 11 U.S.C. § 621(2) requirement of being fair and equitable.
In considering those contentions, we must be mindful that the “determination of the district court as to the fairness of the plan will not be set aside unless clearly shown to be erroneous.” Horowitz v. Kaplan, 193 F.2d 64, 71 (1st Cir. 1951), cert. den. 342 U.S. 946, 72 S.Ct. 561, 96 L.Ed. 704 (1952).
We do not find it necessary to decide whether the district court — in connection with a plan of reorganization of a solvent debtor, especially one (1) which is not going to continue in business, (2) which under the reorganization plan will not have creditors holding securities issued by the debtor before the plan or as a consequence of the plan, and (3) which has cash or its equivalent[4] sufficient to pay in full the whole amount of all creditors’ claims including interest upon unpaid interest — has the power, in the sole interest of the stockholders to require a creditor (such as the convertible debenture holder represented by FNBB) who has a contractual right to interest on interest to surrender such right in exchange for a different right having equal financial *270 value but being unwanted by the creditor. Nor need we decide whether to compel such a surrender solely for the benefit of stockholders is a violation of the “absolute priority rule,” the scope of which is indicated in the following quotation: “Whether a company is solvent or insolvent in either the equity or the bankruptcy sense, ‘any arrangement of the parties by which the subordinate rights and interests of the stockholders are attempted to be secured at the expense of the prior rights’ of creditors ‘comes within judicial denunciation.’ ” Consolidated Rock Products Co. v. Du Bois, 312 U.S. 510, 527, 61 S.Ct. 675, 685, 85 L.Ed. 982 (1941).
Even if it is not the law that in the case of a solvent debtor any compulsory exchange of a creditor’s contractual right to cash for a substitute which he did not want and which benefits only stockholders would make a reorganization plan unfair and inequitable, and would make confirmation of the Trustee’s Plan ultra vires of the district court, in the case at bar the Trustee’s Plan is “clearly shown” (see Horowitz v. Kaplan, supra) to be unfair and inequitable because the Trustee’s Plan does not provide in exchange for the creditor’s contractual right just compensation. We pass the point that there was not before the district court any evidence of the monetary value of the contractual right to the unpaid interest on interest on the convertible debentures. It is sufficient for us to note that by the specific terms of the 1970 Indenture (quoted in footnote 1, supra) long before any plan of reorganization was formulated, the convertible debenture creditors had become entitled to immediate (not just 1990) payment of the principal and unpaid instalments of interest on their debentures as well as to interest on interest. Section 8.02 of the 1970 Indenture provided that “In case there shall be pending proceedings ... for the reorganization of CIC,” the Trustee “shall be entitled” “to file and prove a claim ... for the whole amount of principal ... and interest owing and unpaid in respect of the Debentures.” We hold that FNBB’s May 7, 1976 proof of claim[5] accelerated to May 7, 1976 the payment date of the principal of the debentures. Therefore, we hold that the district court erred when it decided to confirm the Trustee’s Plan on the court’s theory that it gave the convertible debenture holders in exchange for their right to payment of interest on interest a new right of accelerating from 1990 to 1981 the payment of the principal of the debentures. Our ultimate conclusion is that with respect to convertible debenture holders the Trustee’s Plan was not “fair and equitable” because it did not compensate them for the contractual right of which they were deprived.
We now turn to the three other appeals, all made on behalf of holders of straight debentures.
*271 The straight debentures were issued pursuant to the 1973 Indenture which provided that they were governed by New York law. It is undisputed that that conflict-of-laws provision was valid.
One of the appellants contends that New York law permits the recovery of interest on interest. But the contention is devoid of merit. For a century the New York Court of Appeals consistently has held that a contractual provision to pay interest on interest is void under the law of New York. Young v. Hill, 67 N.Y. 162 (1876); Newburger-Morris Co. v. Talcott, 219 N.Y. 505, 510, 114 N.E. 846 (1916) (per Cardozo, J.); Giventer v. Arnow, 37 N.Y.2d 305, 372 N.Y.S.2d 63, 333 N.E.2d 366 (1975). In the Supreme Court of the United States, Justices Frankfurter, Jackson and Burton— without either the dissent or the concurrence of their brethren — recognized in a bankruptcy case that those cases represented the law of New York. Vanston, 329 U.S. pp. 171-172, 67 S.Ct. pp. 244 — 45. And in an opinion by Judge Swan, concurred in by Judges Learned Hand and Jerome Frank, the Second Circuit held that interest on interest was not recoverable in bankruptcy where the claim was based on a coupon bond attached to a bond governed by New York law. Empire Trust Co. v. Equitable Office Building Corp., 167 F.2d 346 (2nd Cir. 1948). After judges of such eminence have spoken, we need add nothing except our concurrence in their opinion that under New York law a contractual provision to pay interest on interest is void, and our view that New York law also precludes a non-contractual right to pre-petition interest on interest. See Young v. Hill, supra.
Nonetheless, the straight debenture holders received under the Trustee’s Plan less than was their due.
As we earlier stated, federal not state law determines in a bankruptcy case whether a creditor is entitled to post-petition interest on a valid pre-petition claim. Vanston, supra, 329 U.S. at 161-163, 67 S.Ct. at 239-240.
Under federal bankruptcy rules the straight debenture holders are entitled to interest (here at the 8% rate which the Trustee’s Plan allowed other unpaid unsecured creditors) from the date of the petition in bankruptcy, upon all unpaid (1) prepetition instalments and (2) post-petition instalments, (but not upon pre-petition so-called “accrued” interest, that not being recoverable under New York law).[6] It is a general rule of federal bankruptcy law that if the alleged bankrupt proves solvent, creditors have a right to receive post-petition interest at the statutory general rate — here 8% — before any surplus reverts to the debt- or. See New York v. Saper; United States v. Bass, Littleton v. Kincaid, all supra.
The straight debenture holders’ non-contractual right to interest on interest is distinguishable from the convertible debenture holders’ contractual right to interest on interest so we need to examine from a slightly different perspective points already covered.
We need not decide whether with respect to such a non-contractual right it would be fair and equitable and within the district court’s power (in the case of the reorganization of a solvent debtor which is not continuing in business, which will have no outstanding securities, and which will have had during the time the debtor was in custodia legis the advantage of using without cost the money due the straight debenture holders) to require a straight debenture holder to take a financially equivalent substitute in exchange for his right to post-petition interest on interest, against the will of the straight debenture holder and solely to benefit stockholders. Nor need we consider whether to compel such a deprivation of the non-contractual right to interest on interest violates the “absolute priority” rule. See 6 Collier on Bankruptcy H 9.08 at 1583 (14th ed., 1978).
*272 It suffices for us to hold that here, as with the convertible debenture holders, the Trustee’s Plan offered, in exchange for the denied right to interest on interest, only that which the debenture holders already had, to wit, in the case of the straight debenture holders a right to immediate (1981, not 1985) payment of principal. That statement is based on the fact that Bankers Trust as trustee for the straight debenture holders had on May 24,1976 filed a proof of claim which we construe as pari passu with the May 7, 1976 FNBB proof of claim on behalf of the convertible debenture holders. See footnote 5, supra. We therefore conclude, as we did with respect to the convertible debenture holders, that the Trustee’s Plan was with respect to the straight debenture holders not fair and equitable and that the district court erred in confirming the Plan.

Judgment vacated; case remanded to the district court for further proceedings in accordance with this opinion.

. § 8.02 of the 1970 Indenture and § 7.02 of the 1973 Indenture each provide:
CIC covenants that (1) in case default shall be made in the payment of any instalment of interest on any of the Debentures, as and when the same shall become due and payable, and such default shall have continued for a period of thirty days, or (2) in case default shall be made in the payment of the principal of ... any of the Debentures when the same shall have become due and payable, whether upon maturity of the Debentures or upon redemption or upon declaration or otherwise — then, upon demand of the Trustee, CIC will pay to the Trustee, for the benefit of the holders of the Debentures, the whole amount that then shall have become due and payable on all such Debentures for principal ... or interest, as the case may be, with interest upon the overdue principal ... and instalments of interest (to the extent permitted by law) at the rate of interest borne by the Debentures ...
In case there shall be pending proceedings for the bankruptcy or for the reorganization of CIC ... under the National Bankruptcy Act ... the Trustee, irrespective of whether the principal of the Debentures shall then be due and payable as therein expressed or by declaration or otherwise and irrespective of whether the Trustee shall have made any demand pursuant to the provisions of this Section ... shall be entitled and empowered, by intervention in such proceedings or otherwise, to file and prove a claim or claims for the whole amount of principal ... and interest owing and unpaid in respect of the Debentures ... [Emphasis added.]

. The district court’s June 18, 1981 opinion (concluding that the Trustee’s Plan was fair and equitable) and its September 9, 1981 opinion (relating to interest on overdue instalments of interest) include findings indicating that CIC’s total liabilities were less than $114 million and that, in addition to other assets, CIC had the benefit of a $159 million promise made by a promisor with “more than sufficient resources.” (A.430).

. The district judge stated that “the debenture holders [of both classes] now argue that they are entitled to be paid interest on the instalments of interest unpaid since the pre-reorganization period.” (A.4) FNBB did not on behalf of the convertible debenture holders file a proof of claim or make an argument on the theory that they were entitled to post-petition interest on the pre-petition interest on the instalments of interest due in 1974 and 1975. Hence we need not consider whether a claim for such post-petition interest would have been a valid claim under federal bankruptcy law even though there was no specific provision in the 1970 Indenture referring to such interest on unpaid interest upon unpaid instalments of interest (thus not being a claim “based ... on the terms of the agreement,” see Justice Frankfurter concurring in Vanston Bondholders’ Protective Committee v. Green, 329 U.S. 156, p. 171, lines 16-17, 67 S.Ct. 237, 244, 91 L.Ed. 162 (1946)). If there had been a claim for such post-petition interest (on interest on instalments of interest), the rate would be 8 rather than 9%. This is so because a contract creditor whose claim rests on a debtor’s breach of an obligation to pay a liquidated sum is entitled to receive post-petition interest at the statutory or other general rate before any surplus reverts to the debtor — at least where the debtor is proved solvent, and even if the creditor’s contract does not so specify. Otherwise, the debt- or would benefit unjustly from the use of money due and owing to the creditor (who presumably could have used the money to earn the market rate of interest).

. See footnote 2, supra.

. We have already construed FNBB’s proof of claim as covering (1) principal, (2) pre-petition unpaid 1974 and 1975 instalments of 9% interest, (3) pre-petition unpaid 9% interest on such unpaid 1974 and 1975 instalments and (4) post-petition contractual 9% interest on unpaid 1974 and 1975 instalments of interest but not post-petition non-contractual interest on what at the time of the petition was the amount of interest due on account of those unpaid 1974 and 1975 instalments of interest. See footnote 3, supra. We further construe the proof of claim as covering (5) instalments of 9% interest which fell due after the petition and (6) 9% interest on such post-petition instalments. We recognize that this further construction involves a liberal interpretation of a proof of claim which recites merely that it seeks “interest owing and unpaid in respect of the Debentures.” A strict construction might treat the proof of claim as limited to interest owing at the time the proof of claim was filed. Were that the construction, items 5 and 6 would not be allowed, and instead the convertible debenture holders would get 8% on principal as post-petition interest payable by a solvent debt- or on all liquidated contract claims whether or not the contract specifically provided for interest from the time of the breach of the contract. See New York v. Saper, United States v. Bass and Littleton v. Kincaid, all supra. But we deem it fairer to view the proof of claim as seeking all interest specifically provided for by the 1970 Indenture whether or not it was owing and unpaid when the petition was filed. Our reasoning is supported by the fact that § 8.02 of the 1970 Indenture and § 7.02 of the 1970 Indenture make mention of the “whole amount” owing and unpaid.

. We have already stated that New York law does not give the straight debenture holders a contractual or a non-contractual right to interest on the pre-petition unpaid 1974 and 1975 instalments of interest. Therefore, no obligation to pay interest on the unpaid 1974 and 1975 instalments found its way into the bankruptcy court. See Justice Frankfurter concurring in Vanston, 329 U.S. at 170, 67 S.Ct. at 243.