**LIBERTY NATIONAL BANK AND TRUST COMPANY OF LOUISVILLE, Appellant,**

v.

**Kenneth Ray GEORGE and Alberta Whitt George, Appellees.**

Civ. A. No. C–85–0761–L(M).

United States District Court,
W.D. Kentucky,
Louisville Division.

Feb. 6, 1987.

Barnett & Alagia by Richard Frockt, Stewart E. Bland and Cindy Harrington, Louisville, Ky., for appellant.

Ford, Klapheke & Meyer by August A. Klapheke, Louisville, Ky., and Parrish & Mulrooney by Larry A. Parrish, Memphis, Tenn., for appellees.

## MEMORANDUM OPINION

MEREDITH, District Judge.

Liberty National Bank and Trust Company of Louisville, successor to United Kentucky Bank, Inc., appeals from the Confirmation Order, entered by the United States Bankruptcy Court for the Western District of Kentucky in this Chapter 11 reorganization proceeding which denied Liberty post-petition pre-confirmation interest and attorney's fees on its secured claims beyond the value of the collateral securing Liberty's interest. The bankruptcy estate of Kenneth Ray George and Alberta Whitt George, who are the debtors in the case below, is admittedly solvent and post-petition interest has been paid on all unsecured claims. The jurisdiction of this Court has been invoked pursuant to Title 28, United States Code, Section 158.

The facts of this case have been set forth at length in the bankruptcy court's memorandum-opinion and have not been challenged on appeal. The bankruptcy judge's conclusions of law are subject to *de novo* review. *See In re Martin,* 761 F.2d 472,

474–75 (8th Cir.1985) (To the extent Liberty makes an adequate protection argument, the "clearly erroneous" standard could possibly apply since there is a split in authority as to whether adequate protection determinations constitute findings of fact or conclusions of law. This Court, however, as is discussed briefly within, is not of the opinion that the bankruptcy court erred either in its understanding of the law or in its findings of fact in relation to the issue of adequate protection.) The pertinent facts can be succinctly stated as follows:

Liberty acquired a judgment claim against the Georges in a state foreclosure proceeding for $2,582,577.26 and a claim on a note given by the Georges for $244,-557.42 both of which were secured by real estate mortgages and security instruments on the accounts receivables and inventory of one of the Georges' companies, Yorktown Lumber Company, giving Liberty a total secured claim of $2,827,134.68. The total value of the collateral at the date of the filing of the bankruptcy petition was $3,000,000.00 giving the collateral an excess value of $172,865.23. Liberty, pursuant to the terms of the mortgage contract, also claimed entitlement to attorney's fees in the amount of $317,759.67 for both pre-petition and post-petition services rendered in collection of the above monies owed by the Georges. The bankruptcy court, after determining that Liberty's claim for attorney's fees was reasonable determined that pursuant to Title 11, United States Code, Section 506(b), the Bank was entitled to the excess value of the collateral, $172,865.23, to be applied towards post petition interest and/or attorney's fees and/or cost, in any manner the Bank wished to allocate this sum. To the extent the excess value of the collateral was insufficient to cover these additional claims, the claims were disallowed. All unsecured claims against the bankrupt's estate were paid, however, with post-petition interest.

The statement of issues presented on appeal as framed by the Bank are as follows:

I. Whether Liberty's claim for post-petition interest should not be limited to the value of Liberty's collateral, when this estate is solvent, and would not become insolvent by payment of that claim?

II. Whether Title 11, United States Code, Section 506(b) limits Liberty's claim for attorney's fees to the value of Liberty's security?

*I. Post-Petition Interest*

The bankruptcy court's rationale in disallowing the Bank's claim for post-petition interest in excess of the value of the collateral is easily understood. Section 502(b) of Title 11, United States Code, provides that claims of creditors filed and objected to, after notice and hearing to determine the amount of such claim shall be allowed "except to the extent that—(2) such claim is for unmatured interest." Thus Section 502(b) sets forth the general rule that interest ceases to accrue on all claims, secured and unsecured, once the petition of the debtor is filed in bankruptcy.

> Section 506(b) of Title 11 states, however: "To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose."

Thus Section 506(b) provides for the payment of post-petition interest and attorney's fees, etc. to a secured creditor to the extent the value of the secured collateral exceeds the secured interest, and it was under this Section that the Bankruptcy Court allowed Liberty's claim for post-petition interest or attorney's fees not in excess of $172,865.23.

Finally, Section 726(a)(5) of Title 11, which is not directly applicable to this Chapter 11 case, Title 11, United States Code, Section 103(b), but which is made applicable through the best interest test of Section 1129 of Title 11, provides in perti-

nent part that: "[P]roperty of the estate shall be distributed—(5) fifth, in payment of interest at the legal rate from the date of the filing of the petition, on any claim paid under paragraph (1), (2), (3), or (4) of this subsection(.)" Paragraphs (1) through (4) of Section 726, provide for the payment of certain prioritized claims, unsecured claims, and penalties, none of which are applicable to Liberty. It was through this Section that the bankruptcy court allowed post-petition interest to be paid on all unsecured claims.

Therefore, by its express terms, the Bankruptcy Code contains (1) a flat out prohibition against all post-petition interest; (2) a definition of secured claims which allows post-petition interest to be paid to oversecured creditors to the extent their interests are oversecured; and (3) a rule of priority payments which provides for the payment of post-petition interest to certain types of claims, primarily those of unsecured creditors before any remainder is paid to the debtor. Since Liberty's claim for post-petition interest in excess of the value of the collateral securing its interests fell within the prohibition of Section 502(b) and outside the express provisions of Section 506(b) and 726(a)(5) the bankruptcy court disallowed that portion of the Bank's claim.

■ The general rule in bankruptcy, which had been applied for more than a century and a half in 1911 when Justice Holmes drafted the opinion in *Sexton v. Dreyfus*, 219 U.S. 339, 31 S.Ct. 256, 257, 55 L.Ed. 244 (1911), and which is still good law today, is that "interest on the debtors' obligations ceases to accrue" the moment the petition is filed in bankruptcy. *Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 67 S.Ct. 237, 240, 91 L.Ed. 162 (1947); *City of New York v. Saper*, 336 U.S. 328, 69 S.Ct. 554, 555–56, 93 L.Ed. 720 (1949); *In Re Macomb Traveler Coach*, 200 F.2d 611, 613 (6th Cir.1953); *Debentureholders Protective Committee of Continental Investment Corp. v. Continental Investment Corp.*, 679 F.2d 264, 268–69 (1st Cir.), *cert. denied*, 459 U.S. 894,

103 S.Ct. 192, 74 L.Ed.2d 155, (1984). In *Vanston* the Supreme Court explained the reason for this rule:

"Exaction of interest, where the power of the debtor to pay even his contractual obligations is suspended by law, has been prohibited because it was considered in the nature of a penalty imposed because of delay in prompt payment—a delay necessitated by law if the courts are properly to preserve and protect the estate for the benefit of all interests involved."

67 S.Ct. at 240.

Three exceptions to this general prohibition on post-petition interest have also long been recognized. The Sixth Circuit most recently stated these exceptions as follows:

"First, courts allow interest where the allegedly bankrupt debtor ultimately proves solvent. Second, courts allow interest to secured creditors when the secured property generates income. Third, courts have awarded interest on secured claims when the value of the security exceeds both the principal and interest due."

*Securities Investor Protection Corp. v. Ambassador Church Finance/Development Group*, 788 F.2d 1208, 1211, n. 4 (6th Cir.1986).

In *Vanston*, the Court said:

"But where an estate was ample to pay all creditors and to pay interest even after the petition was filed, equitable considerations were invoked to permit payment of this additional interest to the secured creditor rather than to the debtor."

67 S.Ct. at 241. Finally, in *In re Busman*, 5 B.R. 332, 336 (Bankr.E.D.N.Y.1980), the court after noting the general rule against post-petition interest said: "[N]evertheless the obligation to pay interest is deemed revived and reinstated where the bankrupt estate is solvent...."

Clearly, under the common law prior to the enactment of the present Bankruptcy Code in 1978, Liberty's claim for post-petition interest would have been allowed. However, the bankruptcy court below con-

cluded that the only solvency exceptions that survived the enactment of the 1978 Code were those expressly included by Congress in Sections 506(b) and 726(a)(5) stating "If Congress had intended for the solvency exception to relate to secured claims as well as unsecured as evidenced by § 726(a)(5), then it could have included such an exception in § 506(b). It did not, however, do so."

■ "It is an elementary rule of statutory construction that we initially look to the plain language of the statute to determine the meaning of legislation." *McBarron v. S & T Industries*, 771 F.2d 94, 97 (6th Cir.1985). The plain language of Sections 502(b), 506(b) and 726(a)(5), make no allowance for post-petition interest on a secured claim above the excess value of the collateral. The Bank's argument that the "best interest" test of Section 1129(a)(7)(A)(ii) would require the payment of post-petition interest in excess of the secured collateral, raises no ambiguity in the statute, and, in fact, simply does not survive close scrutiny, since this Section simply takes us in a circle back to Section 726(a)(5). Neither does it appear that Congress intended to backdoor post-petition interest payments to undersecured creditors as an element of adequate protection. *See In re Timbers of Inwood Forest Associates, Ltd.*, 793 F.2d 1380 (5th Cir.) *reh'g en banc granted*, 802 F.2d 777 (1986). In addition, the Court notes the Plan confirmed by the bankruptcy court provided discount payments tied to the Federal Reserve Bank's announced interest rate which at the time would have called for monthly payments of $18,000.00 to protect Liberty's interest in the collateral from deterioration.

■ The bankruptcy court's decision is further buttressed by the general principle of statutory construction: If a statute specifies one exception to the general application, other exceptions are excluded; *expressio unius est exclusio alterius*. Or, as the Supreme Court said in *Andrus v. Glover Construction Co.*, 446 U.S. 608, 100 S.Ct. 1905, 1910, 64 L.Ed.2d 548 (1980), "Where Congress explicitly enumerates certain ex-

ceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent."

In addition, the Court is reminded that "[t]he relevant question is not whether, as an abstract matter, the rule advocated [by the appellant] accords with good policy. The question we must consider is whether the policy [the appellant] favor[s] is that which Congress effectuated by its enactment of [the statutes in question.] Courts are not authorized to rewrite a statute because they might deem its effects susceptible of improvements." *Badaracco v. Commissioner*, 464 U.S. 386, 104 S.Ct. 756, 764, 78 L.Ed.2d 459 (1984).

Prior to 1978 it was generally held that the equitable considerations which called for the general prohibition on post-petition interest were not applicable where the debtor's estate proved to be solvent, and indeed, where the estate was capable of paying post-petition interest "equitable considerations were invoked to permit payment of this additional interest to the secured creditor rather than to the debtor." *Vanston*, 67 S.Ct. at 241. Otherwise "the solvent debtor's estate will have been enriched by the bankruptcy trustee's use of money which the debtor had promised to pay promptly to the creditor, and, correspondingly, the creditor will have been deprived of the opportunity to use the money to *his* advantage." *Debentureholders*, 679 F.2d at 269; *cf. In re American Mariner Industries*, 734 F.2d 426, 435 (9th Cir. 1984). In enacting the 1978 Bankruptcy Code it does not appear that Congress chose to deviate substantially from the prior judge made rules concerning post-petition interest or that any changes were made in codifying these rules that would shift the equities to favor the solvent debtor.

Indeed, it appears to be anomalous to hold that unsecured claims could receive post-petition interest in full and that the balance of the estate be returned to the debtors while a secured creditor such as Liberty is denied full post-petition interest.

*Cf. In Re Colegrove*, 771 F.2d 119, 122 (6th Cir.1985). It appears to be equally anomalous to deny an undersecured creditor post-petition interest on the secured portion of its claim while granting post-petition interest on the unsecured portion.

However, the Bankruptcy Code, as it is currently written clearly would preclude Liberty's claim for post-petition interest above the excess value of its collateral. Congress may have a good reason for creating these apparent anomalies. From the authorities cited by the bankruptcy court, the parties, and this Court's own research, it appears to be more likely that in enacting the present Bankruptcy Code, Congress simply left a loophole from which debtors in the Georges' position will be able to benefit.

Be that as it may, it is not the function of this Court to rewrite the statute. The words of Justice Frankfurter are relevant here:

> "Legislation introducing a new system is at best empirical, and not infrequently administration reveals gaps or inadequacies of one sort or another that may call for amendatory legislation. But it is no warrant for extending a statute that experience may disclose that it should have been made more comprehensive.
>
> \* \* \* \* \* \*
>
> The details with which the exemptions in this Act have been made preclude their enlargement by implication. While the judicial function in construing legislation is not a mechanical process from which judgment is excluded, it is nevertheless very different from the legislative function. Construction is not legislation and must avoid 'that retrospective expansion of meaning which properly deserves the stigma of judicial legislation.' *Kirschbaum Co. v. Walling*, 316 U.S. 517, 62 S.Ct. 1116, 1119, 86 L.Ed. 1638. To blur the distinctive functions of the legislative and judicial processes is not conducive to responsible legislation."

*Addision v. Holly Hill Fruit Products*, 322 U.S. 607, 64 S.Ct. 1215, 1221, 88 L.Ed. 1488 (1944).

■ This Court will not torture beyond recognition the words of the statute in an attempt to reach what appears to be the equitable result in an isolated case, usurping what is inherently a legislative function, and thereby creating the need for a series of ad hoc policy decisions. It may be small consolation to Liberty in this case but their recourse lies with Congress. Therefore, the Court will affirm the bankruptcy court's denial of post-petition interest on Liberty's secured claims above the excess of the collateral.

## II. Attorney's Fees

In the bankruptcy court's Confirmation Order Liberty was awarded attorney's fees and/or post-petition interest to the extent it was oversecured. On appeal Liberty argues that Section 506(b) should not preclude an unsecured claim for attorney's fees relying on *In re United Merchants & Manufacturers*, 674 F.2d 134 (2nd Cir. 1982).

The bankruptcy court first determined that under the express terms of the contract between Liberty and the Georges, Liberty was entitled to attorney's fees and that these provisions were valid under Kentucky law. Having previously determined that the collateral had an excess value of $172,865.23 the bankruptcy court found Section 506(b) to be applicable. The court then applied the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974) to assess the reasonableness of the fees. The court determined that the fees requested were reasonable and held that Liberty was entitled to the sum of $172,865.23, the excess value of the collateral, to be applied towards interest and/or attorney's fees and/or costs, in any manner the Bank wished to allocate this sum. No provision was made for attorney's fees in excess of $172,865.23.

In *In re United Merchants*, the Second Circuit after noting that neither the 1978 revisions to the Bankruptcy Code nor its legislative history "sheds any light on the status of an unsecured creditor's contractu-

al claims for attorney's fees," 674 F.2d at 138, continued to find collection costs, which were provided by contract, to be allowed as part of the creditor's unsecured claim. In ruling on this issue this Court has the advantage of two opinions, one by the Sixth Circuit, *In Re Martin*, 761 F.2d 1163 (6th Cir.1985), and one by the Ninth Circuit, *Matter of 268 Limited*, 789 F.2d 674 (9th Cir.1986), rendered in the time that has transpired since the bankruptcy court's opinion was written. In *Martin* the Sixth Circuit said:

> However, creditors are entitled to recover attorney's fees in bankruptcy claims if they have a contractual right to them valid under state law, which appears to be the case here, as the note itself provided that the Martins would reimburse the Bank for the costs and attorney's fees necessary to collect the note. *Security Mortgage Co. v. Powers*, 278 U.S. 149, 153–54, 49 S.Ct. 84, 85–86, 73 L.Ed. 236 (1928); *In Re Bain*, 527 F.2d 681, 685 (6th Cir.1975). The validity of the creditor's claim for attorney's fees does not depend on whether the obligation is secured (unless state law so provides) *In re United Merchants & Manufacturers*, 674 F.2d 134, 137 (2nd Cir.1982). Tennessee state law enforces such contractual obligations for reasonable attorney's fees. (citation omitted).
>
> The bankruptcy court disallowed costs to the Bank pursuant to its discretionary power to award costs under former Bankruptcy Rule 754(b). However, a contractual right to attorney's fees is part of the debt to the creditor and is not dependent on an award of costs, so Rule 754 had no application here. *See, Bain*, 527 F.2d at 685.
>
> *　*　*　*　*　*
>
> Prevailing creditors still have no statutory right to attorney's fees, and if they have a contractual right, it must be assumed they gave value for that right at the time credit was advanced. *See United Merchants*, 674 F.2d at 137.

761 F.2d at 1168.

In *268 Limited*, the Ninth Circuit after upholding the bankruptcy court's award of

a $20,000 fee as reasonable under Section 506(b), determined that the creditor, who was amply oversecured, was not precluded from seeking the balance of its contractual fees, as an unsecured creditor. Although the balance of the fees sought by the creditor in *268 Limited*, were not reasonable and thus were not entitled to a secured status under Section 506(b), *see Unsecured Creditor's Committee v. Walter E. Heller & Company Southeast, Inc.*, 768 F.2d 580, 582–85. (4th Cir.1985), they were enforceable under state law and, therefore, could be claimed under Section 502(b)(1) just as any other unsecured claim. 789 F.2d at 678. As the Ninth Circuit said:

> "Because other creditors may claim such expenses under 11 U.S.C. § 502(b)(1) (Supp. II 1984), to bar [the oversecured creditor] from seeking the balance of its fees as an unsecured claim would make it worse off in bankruptcy than it would have been if its claim were unsecured."

*Id.*

■ Therefore, it is now apparent that in the case *sub judice* the bankruptcy court should not have limited Liberty's claim for contractual attorney's fees to the value of the excess collateral, but should have allowed the balance of these fees as an unsecured claim under Section 502(b)(1). *See also In re Ladycliff College*, 46 B.R. 141, 143 (S.D.N.Y.1985).

An appropriate order will be entered as of this date.

### ORDER

For the reasons stated in the Court's Memorandum Opinion entered this same date,

IT IS ORDERED that the Confirmation Order of the United States Bankruptcy Court for the Western District of Kentucky is hereby reversed to the extent that it denied or limited the claims of Liberty National Bank and Trust Company of Louisville for contractual attorney's fees to the

amount of its excess security. The Confirmation Order is affirmed in all other respects. This matter is remanded for further proceedings consistent with the opinions expressed in the accompanying Memorandum of Law.