In re CHATEAUGAY CORPORATION,
Reomar, Inc., the LTV Corporation,
et al., Debtors.

UNITED STATES TRUST COMPANY
OF NEW YORK, Appellant,

v.

LTV STEEL COMPANY, INC., and Official Committee of Unsecured Creditors
of LTV Steel Company, Inc., Appellees.

No. 93 Civ. 1480 (PKL).

United States District Court,
S.D. New York.

Aug. 2, 1994.

Robinson Silverman Pearce Arohnson & Berman, New York City (Thomas Moers Mayer, Walter H. Curchak, Mark D. Risk and Timothy W. Reinig, of counsel), for appellant U.S. Trust Co.

Kaye, Scholer, Fierman, Hays & Handler (Myron Kirschbaum, Michael J. Crames, Steven E. Fox and John C. Amabile, of counsel), Davis, Polk, Wardwell (Karen E. Wagner, of counsel), New York City, for appellee LTV Steel Co., Inc.

Stroock & Stroock & Lavan, New York City (Mark A. Speiser, of counsel), for appellee Official Committee of Unsecured Creditors of LTV Steel Co., Inc.

Hahn Loeser & Parks, Cleveland, OH (Lee D. Powar, Lawrence E. Oscar and Alan R. Styles, of counsel), for amicus curiae Huntington Nat. Bank.

### OPINION AND ORDER

LEISURE, District Judge.

This is an appeal from an order issued on February 1, 1993, as amended February 8, 1993, by the United States Bankruptcy Court for the Southern District of New York ("Order"). 150 B.R. 529. In the Order, the Honorable Burton R. Lifland, United States Bankruptcy Judge, Southern District of New York, held *inter alia*, that appellant-United States Trust Company of New York ("U.S. Trust"), was not entitled to compound interest *i.e.*, interest on unpaid installments of interest, pursuant to LTV Steel Company Inc.'s ("LTV") Indenture of First Mortgage.[1]

U.S. Trust appeals from the portion of the Order denying its claim for compound interest. Appellees LTV and the Official Committee of Unsecured Creditors of LTV Steel Company, Inc. (the "Committee") oppose the instant appeal, and seek an affirmance of the bankruptcy court's Order denying compound interest.[2] For the following reasons, the Order of the Bankruptcy court is hereby affirmed.[3]

### BACKGROUND

#### A. *Underlying Facts* [4]

On or about July 17, 1986 (the "Petition Date"), LTV filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101–1330 (1993) (the "Code"). Since the Petition Date, LTV has continued in possession of its property and in the management of its business pursuant to 11 U.S.C. §§ 1107(a) and 1108.

#### B. *The Bonds and Indenture of First Mortgage*

The First Mortgage provides, *inter alia*, that YS & T, LTV's predecessor in interest, would, from time to time, issue bonds to raise funds for various purposes. As of the Petition Date, LTV was, and presently remains, indebted on nine (9) series of bonds issued under the First Mortgage. The bonds are secured by both real and personal property of LTV, and are subject to the terms and conditions of the First Mortgage.

LTV remained current in all payments of principal and interest under the bonds until the Petition Date. Beginning with the petition date, however, LTV ceased making payments of both principal and interest which were due on the bonds. In the First Mort-

---

1. The Indenture of First Mortgage, dated December 21, 1927, was originally entered into by the Youngstown Sheet and Tube Company ("YS & T") and Bankers Trust Company. LTV is the successor-in-interest to YS & T and has assumed all obligations under the First Mortgage. U.S. Trust succeeded Bankers Trust Company as the Indenture Trustee under the mortgage.

2. Initially, LTV appealed the portion of the Order that allowed interest on the "Series H" bonds, issued and secured under the Mortgage, to be computed at the "default" or "post-maturity" rate. However, by way of a notice of withdrawal dated June 9, 1993, LTV withdrew its cross-appeal.

3. By way of a notice of motion dated April 19, 1993, the firm of Hahn Loeser & Parks, counsel for the Huntington National Bank, moved this Court for leave to file a brief on Appeal of Amicus Curiae, and attached and filed said brief. The motion for leave to file a brief on Appeal of Amicus Curiae is hereby granted. In deciding the instant appeal, the Court has considered all papers submitted by the parties as well as Huntington National Bank's Amicus brief.

4. The facts set forth herein are undisputed and derive predominantly from the bankruptcy court's decision dated February 1, 1993.

gage, LTV had agreed that in the event of a default it would pay interest on overdue installments. Pursuant to Article Eight, Section 20 of the First Mortgage, LTV is obligated to pay:

such interest or principal, or both, as the case may be, with interest upon overdue installments of interest at the same rates, respectively, as shall be borne by the bonds on which such interest shall be in default; ... the [Indenture Trustee] ... shall be entitled to recover judgment therefor and, in case of the pendency of any receivership, insolvency, or bankruptcy proceedings affecting the Company or its property, to file and prove a claim for the whole amount so due and unpaid, with interest as aforesaid.

First Mortgage, Art. Eight, § 20.

### C. *Proof Of Claim and Subsequent Litigation*

On November 24, 1987, U.S. Trust filed a proof of claim with respect to its claims arising under the bonds, including claims for applicable interest, costs, fees, expenses and charges. U.S. Trust also filed a summons and complaint seeking various forms of relief, including, *inter alia*, adequate protection of its security interest under the First Mortgage. On August 28, 1989, by way of a stipulation entered into by the parties and approved by order of the court, the parties agreed to resolve the litigation.

Pursuant to the stipulation, LTV agreed that each claim under each bond would be allowed "as a valid, duly perfected, non-voidable, fully secured claim under sections 502, 506(a) and 506(b) of the Bankruptcy Code without defense, offset or counterclaim of any kind." Stipulation at 9–10. LTV also agreed to maintain the collateral for the bonds at a value above the amount of the Indenture Trustee's claim, thus assuring that the bonds would at all times be over secured and that interest would accrue thereon.

LTV further agreed that the amount of the allowed claim under each bond would include each bond's *"pro rata* share of the interest

accrued on all bonds as provided for under section 506(b) of the Code." *Id.*

The stipulation did not resolve the issue of whether the allowed claim of the Indenture Trustee includes interest on overdue installments of interest accruing post-petition, *i.e.,* the compounding of interest for the period following LTV's filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Pursuant to the stipulation, both parties reserved their rights to contest this issue.

### D. *LTV's Plan of Reorganization and Disclosure Statement*

On or about February 14, 1992, LTV filed its First Modified Plan of Reorganization and proposed First Modified Disclosure Statement. The plan provides that all fully secured claims would include "post-Filing Date interest to the Effective Date to the extent allowable under section 506(b) of the Code (without any interest attributable to default or penalty rates, which shall be deemed cancelled, unenforceable and discharged.)" First Modified Plan of Reorganization filed February 14, 1992, ("Plan") at 1–2.

On May 27, 1992, U.S. Trust filed an objection to the Disclosure Statement. U.S. Trust objected to the Disclosure Statement on the grounds that it classified the Indenture Trustee's allowed claim, brought on behalf of the bondholders, as "unimpaired" even though the plan provided neither (i) for interest on overdue installments of post-petition interest nor (ii) for interest calculated at the default or post-maturity rate.[5]

### E. *Procedural Background*

On August 12, 1992, U.S. Trust began an adversary bankruptcy proceeding against LTV to resolve the two above-mentioned issues. On September 23, 1992, LTV filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), as made applicable by Federal R.Bankr.P. 7012(b). LTV asserted that the complaint failed to state a claim, because it did not allege that LTV was solvent, nor

---

5. The issue of which interest rate was applicable was determined in the bankruptcy court's Order. An appeal of this portion of the Order was filed

by LTV and the Committee, appellees herein, but subsequently withdrawn. *See supra,* note 2.

could it allege, under applicable New York State law, that compound interest would be permissible.

On October 22, 1992, the bankruptcy court signed a Stipulation and Order permitting the Official Committee of Unsecured Creditors to intervene in the adversary proceeding. The Steel Committee supported LTV's position on the issue of compound interest.

Also on October 22, 1992, U.S. Trust filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56(c) as made applicable by Fed.R.Bankr.P. 7056. U.S. Trust contended that, as an over secured creditor, it was entitled to compound interest as a matter of *federal* law, despite provisions in New York State law. In its motion, U.S. Trust also sought interest on the overdue installments of principal at the post-maturity rate.

The bankruptcy court granted LTV's motion to dismiss with respect to the enforceability of the compound interest provision, thus denying U.S. Trust's motion for summary judgment on this issue. With respect to the rate of interest on overdue installments of principal, the bankruptcy court granted U.S. Trust's motion for summary judgment. The Court decided this as a matter of law and not based upon equitable considerations. The instant appeal, brought by U.S. Trust, appeals the portion of the Court's Order denying it compound interest.

## DISCUSSION

### A. *Applicable Standard of Review*

This Court has jurisdiction to hear this appeal from the Order of the Honorable Burton R. Lifland, United States Bankruptcy Judge, Southern District of New York, dated February 1, 1993, pursuant to 28 U.S.C. § 158. The applicable standard of review is provided by Rule 8013 of the Federal Rules of Bankruptcy Procedure, which directs that the bankruptcy court's findings of fact may not set aside unless they are shown to be clearly erroneous. Fed.R.Bankr.Pro. 8013; *see also In re Manville Forest Products Corp.,* 896 F.2d 1384, 1388 (2d Cir.1990) ("We will reverse the bankruptcy court only if we are 'left with the definite and firm conviction that a mistake has been committed.'") (quot-

ing *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).

A bankruptcy court's legal conclusions are generally subject to a *de novo* review by the reviewing court. *See In re Maxwell Newspapers, Inc.,* 981 F.2d 85, 89 (2d Cir.1992) (citations omitted); *see also, In re Ionosphere Clubs,* 922 F.2d 984, 988–89 (2d Cir. 1990), *cert. denied sub nom., Air Line Pilots Ass'n, Int'l v. Shugrue,* — U.S. —, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991); *In re Fugazy Express,* 124 B.R. 426 (S.D.N.Y.1991) (grant of summary judgment by bankruptcy court is subject to *de novo* review in district court), *appeal dismissed,* 982 F.2d 769 (2d Cir.1992).

### B. *Enforceability of the Compound Interest Provision*

State law generally determines the property rights in the assets of a bankrupt's estate since such "[p]roperty interests are created and defined by state law." *See Nobelman v. American Savings Bank,* — U.S. —, —, 113 S.Ct. 2106, 2110, 124 L.Ed.2d 228 (1993) (quoting *Butner v. United States,* 440 U.S. 48, 54–55, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136 (1979)). In *Vanston Bondholders Protective Committee v. Green,* 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946), Justice Frankfurter stated that "no obligation finds its way into a bankruptcy court unless, by the law of the state where the acts constituting the transaction occur, the legal consequences of such a transaction is an obligation to pay." *Id.* at 161, 67 S.Ct. at 239. As the Second Circuit stated in the case of *In re Koreag, Controle et Revision S.A.,* 961 F.2d 341 (2d Cir.1992), "although federal bankruptcy law determines the outer boundary of what may constitute property of the estate, *state law* determines the 'nature of a debtor's interest' in a given item." *Id.* at 349 (emphasis added). *See also Sandoz Pharmaceuticals Corp. v. Blinn Wholesale Drug Co. (In re Blinn Wholesale Drug Co.),* 164 B.R. 440, 447 (Bankr.E.D.N.Y.1994). The First Circuit expounded on the very issue herein when it stated:

if there is a contract between the creditor and the bankrupt either for interest on the

principal or for interest on unpaid interest on the principal, and *if this is a valid contract under the law of the state* which governs the contract, then the federal bankruptcy law determines whether the contract is enforceable in bankruptcy.

*Debentureholders Protective Committee of Continental Investment Corp. v. Continental Investment Corp., ("CIC"),* 679 F.2d 264, 268 (1st Cir.1982) (emphasis added). *See Matter of Chicago, Milwaukee, St. Paul & Pacific R.R. Co.,* 791 F.2d 524, 532 (7th Cir.1986) (a "bankruptcy court is not allowed to give a creditor rights that state law has withheld from him").

■ Thus to determine the enforceability of a contractual provision for compound interest, a court must first determine whether the provision is valid under the applicable state law. Only then can a bankruptcy court determine whether equitable principles of federal bankruptcy law permit its enforcement. Accordingly, if the contract is invalid under state law, the court need not reach the question of its enforceability under federal bankruptcy law. *See CIC,* 679 F.2d at 268; *see also Boston Post Rd. Ltd. Partnership v. FDIC (In re Boston Post Road Ltd. Partnership),* 21 F.3d 477, 484 (2d Cir.1994) (finding state law determines rate of interest to which creditors are entitled); *XL/Datacomp v. Wilson (In re Omegas Group),* 16 F.3d 1443, 1450 (6th Cir.1994) ("property rights in bankruptcy are determined only by reference to the state law of the jurisdiction"); *Financial Sec. Assurance v. Days Cal. Riverside Ltd. Partnership (In re Days Cal. Riverside L.P.),* 27 F.3d 374, 375–76 (9th Cir.1994) (finding state law determinative in award of interest in bankruptcy proceeding).

■ Because federal courts must defer to state law to determine the enforceability of a compound interest provision, the applicable choice of law principles must determine which state's law applies. It is well established that "a federal court sitting in diversity must apply the substantive laws of the state in which it sits, including the choice of law rules of the forum state." 150 B.R. 529, 540 (quoting *In re PCH Assocs.,* 55 B.R. 273, 279 (Bankr.S.D.N.Y.1985) (citing *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82

L.Ed. 1188 (1938)), *aff'd,* 60 B.R. 870 (S.D.N.Y.1986), *aff'd,* 804 F.2d 193 (2d Cir. 1986)). *See also Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). Applying these principles to the instant action, it is apparent that New York choice of law rules apply. New York choice of law rules in turn require an application of the "center of gravity" theory. According to this theory, the law of the state "which has the most significant contacts with the matter in dispute" must be applied. *Auten v. Auten,* 308 N.Y. 155, 160, 124 N.E.2d 99 (1954); *accord In re Allstate Ins. Co.,* 81 N.Y.2d 219, 226, 613 N.E.2d 936, 939, 597 N.Y.S.2d 904, 907 (1993) (Kaye, C.J.).

■ Applying the center of gravity theory to the instant action, the bankruptcy court correctly concluded that the most significant contacts were with New York and not, as U.S. Trust contended, with Ohio. The First Mortgage was negotiated, written and payable in New York; therefore, New York, as the state where the acts constituting the transaction occurred, provides the applicable law. The bankruptcy court further refined its analysis to specify that the applicable law was the law of New York at the time the contract was entered into by the parties.

■ At the time the contract was entered into, under the law of New York, contractual provisions to pay compound interest were void as against public policy. *See CIC,* 679 F.2d at 271 (1st Cir.) (applying New York law) ("[f]or a century the New York Court of Appeals consistently has held that a contractual provision to pay interest on interest is void under the law of New York.") (citing *Newburger–Morris Co. v. Talcott,* 219 N.Y. 505, 510, 114 N.E. 846 (1916) (per Cardozo, J.), and citing *Empire Trust Co. v. Equitable Office Building Corp.,* 167 F.2d 346 (2d Cir. 1948) (Judges Learned Hand and Jerome Frank, concurring)), *cert. denied,* 459 U.S. 894, 103 S.Ct. 192, 74 L.Ed.2d 155 (1982).

■ Furthermore, the bankruptcy court found that § 5–527 of the New York General Obligations Law, which permits the enforceability of contractual provisions to pay compound interest, and which was not enacted until 1989, should not be applied retroactively

to allow U.S. Trust's claim for compound interest. *See* N.Y.Gen.Oblig.Law § 5–527 (McKinney Supp.1992). This Court concurs with the findings of the bankruptcy court that § 5–527 should not be applied retroactively. *See Thomas v. Bethlehem Steel Corp.,* 63 N.Y.2d 150, 154, 481 N.Y.S.2d 33, 35, 470 N.E.2d 831 (1984) ("An amendment will in general have prospective effect ... unless its language indicates that it should receive contrary interpretation."); *Kilcommons v. New York,* 138 Misc.2d 815, 820, 525 N.Y.S.2d 145, 149 (N.Y.Co.1988) ("Remedial statutes should not be given retroactive effect in the absence of clear legislative indication"), *aff'd,* 144 A.D.2d 1047, 533 N.Y.S.2d 642 (1st Dep't 1988), *appeal denied,* 74 N.Y.2d 605, 543 N.Y.S.2d 398, 541 N.E.2d 427 (1989).

Finding that the law of New York, which was in effect at the time the Indenture agreement was executed, prohibited compound interest, and also finding that § 5–527 is not applicable to the instant action, this Court finds the contractual provision providing for compound interest to be unenforceable.

### CONCLUSION

For the reasons stated above, the Order of the bankruptcy court is hereby affirmed.

**SO ORDERED.**