## In re SOUTHEAST BANKING CORPORATION, Debtor.

**CHEMICAL BANK, as Indenture Trustee under the Indenture, dated as of March 1, 1983, of Southeast Banking Corporation, and Gabriel Capital, L.P., Plaintiffs,**

v.

**FIRST TRUST OF NEW YORK, NAT'L. ASSOCIATION, as Indenture Trustee, The Bank of New York, as Indenture Trustee, and Southeast Banking Corporation, Debtor, Defendants.**

**Bankruptcy No. 91–14561–BKC–PGH.**

**Adv. No. 94–0941–BKC–PGH–A.**

United States Bankruptcy Court, S.D. Florida.

Aug. 8, 1995.

454

Francis L. Carter, Miami, FL, for First Trust of New York, Nat. Ass'n and the Bank of New York.

Phillip Hudson, Miami, FL, for Chemical Bank.

Mark D. Bloom, Greenberg Traurig, Miami, FL, for Southeast Banking Corp.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, GRANTING IN PART AND DENYING IN PART DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT AND DECLARING AS MOOT THE TRUSTEE'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

PAUL HYMAN, Jr., Bankruptcy Judge.

**THIS CAUSE** came before the Court upon the Motion for Summary Judgment and Memorandum of Law in Support Thereof (the "Motion"), filed by the Plaintiffs, Chemical Bank, as successor by merger to Manufacturers Hanover Trust Company, as Indenture Trustee (the "Senior Trustee"), and Gabriel Capital, L.P., an unsecured holder of a significant percentage of the senior notes ("Gabriel Capital"; together, the "Plaintiffs"); the Cross Motion for Summary Judgment, Statement of Undisputed Facts, and Memorandum of Law in Support Thereof; and Response in Opposition to Plaintiffs' Motion for Summary Judgment and Memorandum of Law in Support Thereof (the "Cross Motion"), filed by Defendants, First Trust of New York, National Association, as successor in interest to Morgan Guaranty Trust Company of New York, as Indenture Trustee, and The Bank of New York, as Indenture Trustee (together, the "Indenture Trustees"); the Cross Motion For Partial Summary Judgment as to Liability of Insolvent Estate for Payment of Post–Petition Interest and Interest on Interest (the "Cross Motion for Partial Summary Judgment"), filed by William A. Brandt, Jr., the Chapter 7 Trustee (the "Trustee"); the Plaintiffs' Reply Memorandum of Law in Further Support of Its Motion for Summary Judgment and in Opposition to Defendants' Cross Motion for Summary Judgment (the "Reply"); and the Defendants' Response and Memorandum of Law in Opposition to Plaintiffs' Reply in Further Support of Its Motion for Summary Judgment (the "Response"). The Court, having considered the Motion, the Cross Motion, the Motion for Partial Summary Judgment, responses and replies to said motions, and having reviewed the relevant provisions

of the Indentures at issue, hereby makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

The material facts are not in dispute.

### The Debtor

On September 20, 1991 (the "Petition Date"), Southeast Banking Corporation, the Debtor, filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. On the petition date, the Debtor was and has since remained insolvent within the meaning of 11 U.S.C. § 101(32), in that the sum of all of the Debtor's debts is greater than all of its property at fair valuation.[1]

### The Trustee

On April 14, 1992, William A. Brandt, Jr., was elected as successor Chapter 7 Trustee at a reconvened meeting of creditors. On April 28, 1992, the Court issued an Order confirming the election of the Trustee. In the instant adversary proceeding, Trustee Brandt filed a Cross–Motion For Partial Summary Judgment as to Liability of Insolvent Estate for Payment of Post–Petition Interest and Interest on Interest ("Trustee's cross-motion for partial summary judgment"), along with an affidavit in support. In such motion, Trustee Brandt requests that this Court determine that, so long as the Chapter 7 estate remains insolvent: (1) Plaintiffs are not entitled to payment of the disputed senior interest from the Chapter 7 estate and (2) Should the Court determine that Plaintiffs are entitled to enforce the subordination provisions with respect to the disputed senior interest, the amount of the claim with respect to the senior notes should not be increased, and the payment of such sums should be made from amounts distributed by the Trustee with respect to the senior and subordinated notes.

### Chemical Bank, Senior Indenture Trustee

Plaintiff, Chemical Bank, became the Senior Indenture Trustee upon the merger of Manufacturers Hanover Trust Company into Chemical Bank. Plaintiff, Chemical Bank, is the Senior Indenture Trustee under the following Indenture:

Indenture, dated as of March 1, 1983 (the "Senior Indenture"), between Southeast Banking Corporation and Manufacturers Hanover Trust Company, Trustee.

### Gabriel Capital, Owner Of A Significant Percentage Of The Senior Debentures

Plaintiff, Gabriel Capital, a Delaware limited partnership, and three entities affiliated with Gabriel Capital are the beneficial owners of a significant percentage of the outstanding senior debentures.

### The Bank of New York, Indenture Trustee Under The 1972 Indenture And The 1989 Indenture

The Bank of New York is the Indenture Trustee under the following two Indentures:

a. Indenture, dated as of October 15, 1972 (the "1972 Indenture"), between Southeast Banking Corporation and Morgan Guaranty Trust Company of New York, Trustee, providing for the issuance of $35,000,000 4¾% Convertible Subordinated Debentures Due 1997.

b. Indenture, dated as of March 15, 1989 (the "1989 Indenture"), between Southeast Banking Corporation and Irving Trust Company, Trustee, providing for the issuance of Subordinated Debt Securities.

### First Trust Of New York, Indenture Trustee Under The 1984 Indenture, The 1985 Indenture, And The 1987 Indenture

Defendant, First Trust of New York, as successor in interest to Morgan Guaranty

---

1. The affidavit of William Brandt, Trustee for the Debtor, states that the estate is insolvent based on:

> [T]he fact that pending claims against the estate which have not been disallowed exceed $400 million, and through the date of this Affidavit the estate has accumulated less than that amount in cash (including $50 million

paid to creditors in a First Interim Distribution in 1993) and real and personal property at fair valuation.

In his affidavit, Trustee Brandt attributed no value to claims held by the estate against various third parties since litigation is ongoing and, thus, it is presently impossible to determine the value of such claims.

Trust Company of New York, as Indenture Trustee, is the Indenture Trustee under the following three Indentures:

a. Indenture, dated as of December 1, 1984 (the "**1984 Indenture**"), between Southeast Banking Corporation and Morgan Guaranty Trust Company of New York, Trustee, providing for the issuance of $75,000,000 Floating Rate Subordinated Notes Due 1996.

b. Indenture, dated as of November 1, 1985 (the "**1985 Indenture**"), between Southeast Banking Corporation and Morgan Guaranty Trust Company of New York, Trustee, providing for the issuance of $75,000,000 Floating Rate Subordinated Capital Notes Due 1997.

c. Indenture, dated as of April 1, 1987 (the "**1987 Indenture**"), between Southeast Banking Corporation and Morgan Guaranty Trust Company of New York, Trustee, providing for the issuance of $50,000,000 6½% Convertible Subordinated Capital Notes Due 1999.

(the 1972 Indenture, the 1984 Indenture, the 1985 Indenture, the 1987 Indenture, and the 1989 Indenture are hereinafter referred to, collectively, as the "Indentures").

### The Unsecured Proofs Of Claim

The parties involved in the instant adversary proceeding stipulate, and Trustee Brandt's affidavit in support of his cross-motion for partial summary judgment affirms, that all of the instant claimants filed "proofs of claim as unsecured nonpriority claims, without the attachment of any supporting documents reflecting the assertion of any lien or security interest in property of the Debtor."[2] Therefore, for purposes of this order, the Court finds that none of the instant claimants hold security for the repayment of the indebtedness under the Indentures.

### The Adversary Proceeding

On September 21, 1994, the Plaintiffs commenced this adversary proceeding by filing the Complaint, in which the Plaintiffs seek payment of post-petition interest, interest on interest, and reimbursement of attorney fees and costs to unsecured senior debentureholders from distributions otherwise payable to junior debentureholders, despite the fact that the Debtor was and remains insolvent within the meaning of § 101(32) of the Bankruptcy Code.

### The Subordination Provisions in the Indentures[3]

#### The 1972 Indenture

Section 4.03 of the 1972 Indenture, entitled "Priority of Senior Indebtedness Upon Maturity of Debentures or Distribution of Assets", provides:

> *Priority of Senior Indebtedness Upon Maturity of Debentures or Distribution of Assets.* Upon (i) any acceleration of the principal amount due on the Debentures or (ii) any payment or distribution of assets of the Company of any kind or character, whether in cash, property or securities, to creditors upon any dissolution or winding-

---

2. Each of the Indenture Trustees or their predecessors filed a proof of claim with respect to the indebtedness owed under the Senior and Subordinated Notes, as follows:

Proof of Claim No. 551, filed by Manufacturers Hanover Trust Company as Indenture Trustee for the Senior Notes—$57,250,000.00 face value 11¼% Notes due 1993;

Proof of Claim No. 796, filed by Morgan Guaranty Trust Company as Indenture Trustee for the Debtor's $44,800,000.00 face value Floating Rate Subordinated Notes due 1996;

Proof of Claim No. 798, filed by Morgan Guaranty Trust Company as Indenture Trustee for the $50,000,000.00 face value 6½% Convertible Subordinated Notes due 1999.

Proof of Claim No. 799, filed by Morgan Guaranty Trust Company as Indenture Trustee for the Debtor's $75,000,000.00 face value Floating Rate Subordinated Notes due 1997;

Proof of Claim No. 800, filed by the Bank of New York as Indenture Trustee for the $100,-000,000.00 face value 10½% Subordinated Notes due 2001.

Proof of Claim No. 801, filed by the Bank of New York as Indenture Trustee for the $35,000,-000.00 face value 4¾% Convertible Subordinated Debentures due 1997.

3. Two provisions in each Indenture essentially govern the subordination of payments otherwise payable to junior debentureholders. Specifically, there is an operative subordination provision, which incorporates the term "Senior Indebtedness," a term that is defined in another provision.

up or total or partial liquidation or reorganization of the Company, whether voluntary or involuntary or in bankruptcy, insolvency, receivership or other proceedings, *all principal, premium, if any, and interest due or to become due upon all Senior Indebtedness shall first be paid in full,* or payment thereof provided for in money or money's worth, before any payment is made on account of the principal of, premium, if any, or interest on the Debentures, and upon any such dissolution of winding-up or liquidation or reorganization, any payment or distribution of assets of the Company of any kind or character, whether in cash, property or securities, to which the holders of the Debentures or the Trustee under this Indenture would be entitled, except for the provisions of this Article Four, shall be paid by the Company or by any receiver, trustee in bankruptcy, liquidating trustee, agent or other person making such payment or distribution or by the holders of the Debentures or by the Trustee under this Indenture if received by them or it, directly to the holders of Senior Indebtedness (pro rata to each such holder on the basis of the respective amounts of Senior Indebtedness held by such holder) or their representatives, or to the trustee or trustees under any indenture pursuant to which any instruments evidencing any of such Senior Indebtedness may have been issued, to the extent necessary to pay all Senior Indebtedness in full, in money or money's worth, after giving effect to any concurrent payment or distribution to or for the holders of Senior Indebtedness, before any payment or distribution is made to the holders of the Debentures or to the Trustee under this Indenture (emphasis added).

Section 1.01 of the 1972 Indenture, entitled "Definitions", provides:

*Senior Indebtedness:* The term "Senior Indebtedness" shall mean (a) *all indebtedness for money borrowed incurred by the Company whether outstanding on the date of execution of this Indenture or thereafter created, assumed or incurred,* except the 6% Convertible Subordinated Debentures due 1994 of the Company and such other indebtedness as is by its terms expressly stated to be not superior in right of payment to the Debentures, and (b) any deferrals, renewals or extensions of any such Senior Indebtedness, or debentures, notes or other evidences of indebtedness issued in exchange for such Senior Indebtedness. The term "indebtedness for money borrowed" as used in the foregoing sentence and in Section 8.01 shall mean any obligation of the Company (and any guaranty, endorsement or other contingent obligation of the Company in respect of, or to purchase, or otherwise acquire, any obligation of another) for borrowed money; any indebtedness of the Company (and any guaranty, endorsement or other contingent obligation of the Company in respect of, or to purchase, or otherwise acquire, any indebtedness of another) evidenced by bonds, notes or debentures or other similar instruments; and any purchase money obligation and any note payable or draft accepted by the Company (and any guaranty, endorsement, or other contingent obligation of the Company in respect of, or to purchase, or otherwise acquire, any note payable or draft accepted by another or any purchase money obligation of another) in each case representing an extension of credit (emphasis added).

### Subordination Language Of Both The 1984 Indenture And The 1985 Indenture

Section 11.01 of both the 1984 Indenture and the 1985 Indenture, entitled "Agreement to Subordinate", provides:

*Agreement to Subordinate.* The Company, for itself, its successors and assigns, covenants and agrees, and each holder of a Note likewise covenants and agrees by his acceptance thereof, *that the obligation of the Company to make any payment on account of the principal of and interest on each and all of the Notes shall be subordinate and junior in right of payment to the Company's obligations to the holders of Senior Indebtedness of the Company, to the extent provided herein,* and that in the case of any insolvency, receivership, conservatorship, reorganization, readjustment of debt, marshalling of assets and liabilities

or similar proceedings or any liquidation or winding-up of or relating to the Company as a whole, whether voluntary or involuntary, *all obligations of the Company to holders of Senior Indebtedness of the Company shall be entitled to be paid in full before any payment shall be made on account of the principal of or interest on the Notes.* In the event of any such proceeding, after payment in full of all sums owing with respect to Senior Indebtedness of the Company, the holders of the Notes, together with the holders of any obligations of the Company Ranking on a parity with the Notes, shall be entitled to be paid from the remaining assets of the Company the amounts at the time due and owing on account of unpaid principal of and interest on the Notes before any payment or other distribution, whether in cash, property or otherwise, shall be made on account of any Capital Stock or any obligations of the Company Ranking junior to the Notes. In addition, in the event of any such proceeding, if any payment or distribution of assets of the Company of any kind or character, whether in cash, property or securities, including any such payment or distribution which may be payable or deliverable by reason of the payment of any other indebtedness of the Company being subordinated to the payment of the Notes shall be received by the Trustee or the holders of the Notes before all Senior Indebtedness of the Company is paid in full, such payment or distribution shall be held in trust for the benefit of and shall be paid over to the holders of such Senior Indebtedness or their representative or representatives or to the trustee or trustees under any indenture under which any instruments evidencing any of such Senior Indebtedness may have been issued, ratably, for application to the payment of all Senior Indebtedness of the Company remaining unpaid until all such Senior Indebtedness shall have been paid in full, after giving effect to any concurrent payment or distribution to the holders of such Senior Indebtedness. The obligations of the Company in respect of the Notes shall rank on a parity with any obligations of the Com-

pany Ranking on a parity with the Notes (emphasis added).

Section 1.01 of both the 1984 Indenture and the 1985 Indenture, entitled "Definitions", provides:

*Senior Indebtedness of the Company:* The term "Senior Indebtedness of the Company" means (a) *any indebtedness of the Company for money borrowed, whether outstanding on the date of execution of this Indenture or thereafter created, assumed, or incurred, other than the Notes,* except obligations Ranking on a parity with the Notes or Ranking junior to the Notes, and (b) any deferrals, renewals or extensions of any such Senior Indebtedness. The term "indebtedness of the Company for money borrowed" means (i) any obligation of, or any obligation guaranteed by, the Company for the repayment of borrowed money, whether or not evidenced by bonds, debentures, notes or other written instruments, or (ii) any deferred obligation for the payment of the purchase price of property or assets acquired other than in the ordinary course of business (emphasis added).

### Subordination Language Of Both The 1987 Indenture And 1989 Indenture

Section 1301 of the 1989 Indenture, entitled "Agreement to Subordinate", is identical to § 1301 of the 1987 Indenture, except that § 1301 of the 1987 Indenture includes certain additional language not material to the issues raised in the Complaint or in the motion and cross motion for summary judgment. The immaterial portions of § 1301 of the 1987 Indenture are segregated by brackets from the relevant portions of the 1987 Indenture, which is otherwise identical to § 1301 of the 1989 Indenture:

*Agreement to Subordinate.* The Company, for itself, its successors and assigns, covenants and agrees, and each Holder of a Security likewise covenants and agrees by his acceptance thereof, *that the obligation of the Company to make any payment [ (in cash or by exchange of Capital Securities) ] on account of the principal (and premium, if any) of and interest on*

*each and all of the Securities shall be subordinate and junior in right of payment to the Company's obligations to the holders of Senior Indebtedness* of the Company to the extent provided herein, and in that in the case of any insolvency, receivership, conservatorship, reorganization, readjustment of debt, marshalling of assets and liabilities or similar proceedings or any liquidation or winding-up of or relating to the Company as a whole, whether voluntary or involuntary, *all obligations of the Company to holders of Senior Indebtedness of the Company shall be entitled to be paid in full before any payment [ (including the delivery of Capital Securities) ] shall be made on account of the principal of (and premium, if any) or interest on the Securities.* In the event of any such proceeding, after payment in full of all sums owing with respect to Senior Indebtedness of the Company, the Holders of the Securities, together with the holders of any obligations of the Company Ranking on a Parity with the Securities, shall be entitled to be paid from the remaining assets of the Company the amounts at the time due and owing on account of unpaid principal of (and premium, if any) and interest on the Securities before any payment or other distribution, whether in cash, property or otherwise, shall be made on account of any capital stock or any obligations of the Company Ranking Junior to the Securities. In addition, in the event of any such proceeding, if any payment or distribution of assets of the Company of any kind or character, whether in cash, property or securities, including any such payment or distribution which may be payable or deliverable by reason of the payment of any other indebtedness of the Company being subordinated to the payment of the Securities, shall be received by the Trustee or the Holders of the Securities before all Senior Indebtedness of the Company is paid in full, such payment or distribution shall be held in trust for the benefit of and shall be paid over to the holders of such Senior Indebtedness or their representative or representatives or to the trustee or trustees under any indenture under which any instruments evidencing any of such

Senior Indebtedness may have been issued, ratably, for application to the payment of all Senior Indebtedness of the Company remaining unpaid until all such Senior Indebtedness shall have been paid in full, after giving effect to any concurrent payment or distribution to the holders of such Senior Indebtedness. The obligations of the Company in respect of the Securities shall rank on a parity with any obligations of the Company Ranking on a Parity with the Securities (emphasis added).

Section 101 of the 1987 Indenture and 1989 Indenture, entitled "Definitions", provides:

*"Senior Indebtedness"* means (a) *any indebtedness of the Company for money borrowed, whether outstanding on the date of execution of this Indenture or thereafter created, assumed or incurred* except (i) the Securities, (ii) [a list of certain of the Indentures], all of which are Ranking on a Parity with the Securities in right of payment upon dissolution, liquidation or winding up of the Company, (iii) any other obligation Ranking on a Parity with the Securities, or (iv) any obligation Ranking Junior to the Securities and (b) any deferrals, renewals or extensions of any such Senior Indebtedness. As used in the preceding sentence, the term "indebtedness of the Company for money borrowed" shall mean any obligation of, or any obligation guaranteed by, the Company for the repayment of borrowed money, whether or not evidenced by bonds, debentures, notes or other written instruments, and any deferred obligation for the payment of the purchase price of property or assets acquired other than in the ordinary course of business (emphasis added).

### Minor Differences In The Language Of The Indentures Are Immaterial For Purposes Of Summary Judgment

Both Plaintiffs, Chemical Bank and Gabriel Capital, and Defendants, First Trust of New York and The Bank of New York, having agreed that, although the express language of the subordination provisions may differ slightly from one Indenture to another, the legal effect of these differences is immaterial

**460**

for purposes of summary judgment, the Court finds that the legal effect of the minor variations between the Indentures is immaterial for purposes of these findings of fact and conclusions of law.

## CONCLUSIONS OF LAW

### I. Summary Judgment Is Appropriate

██ Where the unambiguous written language of an agreement governs resolution of a dispute, summary judgment is appropriate. *Payne v. United States Fidelity & Guar. Co.*, 625 F.Supp. 1189, 1191 (S.D.Fla. 1985) ("construction and effect of a written contract ... is a matter of law to be determined by the court"). Where the dispute involves interpretation of boiler-plate language in an indenture, summary judgment is particularly appropriate. *Sharon Steel Corp. v. Chase Manhattan Bank, N.A.*, 691 F.2d 1039, 1048 (2d Cir.1982) (indentures are well-suited for determination as a matter of law, because their uniformity in language is purposeful to encourage the effective functioning of the financial markets by permitting investors to meaningful compare one debenture issue with another; this uniformity among debentures also permits uniform construction by courts), *cert. denied*, 460 U.S. 1012, 103 S.Ct. 1253, 75 L.Ed.2d 482 (1983). Here, the undisputed facts mandate summary judgment, because the issue of whether the unsecured senior debentureholders are entitled to payment of post-petition interest, interest on interest, and reimbursement of attorney fees and costs from distributions otherwise payable to junior debentureholders is governed by the Bankruptcy Code, the Rule of Explicitness, the law of the State of New York existing at the time the Indentures were entered into, and the clear and unambiguous language of the Indentures themselves.

### II. The Senior Debentureholders Are Not Entitled To Payment of Interest on Interest

██ The senior debentureholders are not entitled to interest on interest as a matter of law, because contractual provisions to pay interest on interest were void as against public policy under applicable New York law at the time the Indentures were entered into.

*In re Chateaugay Corp.*, 170 B.R. 551, 555 (S.D.N.Y.1994) ("At the time the contract was entered into, under the law of New York contractual provisions to pay compound interest were void as against public policy"). Notwithstanding that after the issuance of the Indentures, New York enacted § 5–527 of the New York General Obligations Law, which now recognizes the enforceability of contractual provisions to pay compound interest, compound interest provisions are void in contracts entered into before June 24, 1989, the date when § 5–527 became effective. *Id.* at 555–56 (§ 5–527 should not be applied retroactively); *In re Chateaugay Corp.*, 150 B.R. 529, 541 (Bankr.S.D.N.Y. 1993) (§ 5–527 became effective June 24, 1989). In the instant case, as in *Chateaugay*, all the Indentures were executed and entered into before § 5–527 became effective. In *Chateaugay*, based upon governing law, the district court affirmed the bankruptcy court and held that,

> Finding that the law of New York, which was in effect at the time the Indenture agreement was executed, prohibited compound interest, and also finding that § 5–527 is not applicable to the instant action, this Court finds the contractual provision providing for compound interest to be unenforceable.

*Id.* at 556.

The Plaintiffs rely upon § 5.2 of the Senior Indenture as the contractual basis of their claim to interest on interest. That provision, in relevant part, provides,

> ... for principal or interest, as the case may be (with interest to the date of such payment upon the overdue principal and, *to the extent that payment of such interest is enforceable under applicable law,* on overdue installments of interest ...)

Where interest on interest was prohibited by New York law at the time the Indentures were executed, this provision negates entitlement to interest on interest *ab initio*, and the Plaintiffs cannot now resurrect a right they never had.

The Plaintiffs' attempt to distinguish the *Chateaugay* holding, by asserting that the Court reached its decision because the debt-

or there filed bankruptcy before enactment of § 5–527. The petition date, however, is simply irrelevant and was never mentioned as a basis for the decisions of either the bankruptcy court or the district court. *In re Chateaugay Corp.*, 170 B.R. 551 (*passim* ); *In re Chateaugay Corp.*, 150 B.R. 529 (*passim* ). Applying *Chateaugay,* the date on which each of the Indentures was executed is controlling and dispositive—and all of those dates were before enactment of § 5–527. *In re Chateaugay Corp.*, 170 B.R. at 556.

In a footnote, the Plaintiffs cited *Corbin v. Federal Reserve Bank of New York* for the proposition that even prior to the enactment of § 5–527, contractual provisions providing for compound interest were enforceable notwithstanding that they violated New York public policy. PMSJ, p. 29 n. 11; 475 F.Supp. 1060, 1070–71 (S.D.N.Y.1979), *aff'd,* 629 F.2d 233 (2d Cir.1980), *cert. denied,* 450 U.S. 970, 101 S.Ct. 1492, 67 L.Ed.2d 621 (1981). That case, however, was governed by the National Bank Act and case law decided thereunder, not the law of the State of New York. Moreover, the New York cases cited in that same footnote for the proposition that New York state courts, prior to enactment of § 5–527, enforced contractual provisions providing for compound interest, even though those provisions then violated the public policy of New York, were decided on substantially different facts. There, the parties to the contract provided for accrual of compound interest if the obligor voluntarily elected to defer the payment of interest until such time as the principal became due. Here, the Indentures do not provide for an election by the junior debentureholders to defer interest payments otherwise payable to the senior debentureholders. Accordingly, the junior debentureholders could not have intended subordination to the payment of interest on interest, nor have otherwise known that such a provision would be enforced against them in violation of the public policy and law of New York as it then governed the Indentures.

The law of New York which governs these Indentures prohibits enforcement of contractual provisions providing for payment of in-terest on interest. *In re Chateaugay Corp.,* 170 B.R. 551, 555 (S.D.N.Y.1994). Moreover, even if the governing law did permit compound interest, the senior debentureholders cannot be entitled to interest on interest to which they are not entitled in the first instance as unsecured creditors under the Bankruptcy Code, pursuant to 11 U.S.C. § 502 and § 506.[4] Additionally, as encompassed in Trustee Brandt's cross-motion for partial summary judgment, so long as the Chapter 7 estate remains insolvent, Plaintiffs are not entitled to payment of the disputed senior interest from the Chapter 7 estate.

## III. The Plain Meaning of 11 U.S.C. § 502 and § 506 Warrants Denial of Post–Petition Interest In Connection With An Unsecured Claim Against An Insolvent Estate

Pursuant to 11 U.S.C. § 502(a) and (b)(2), a proof of claim is deemed allowed unless it is objected to by a party in interest. If objected to, the court will determine the amount of the claim "as of the date of the filing of the petition," and allow such claim, except to the extent that it is for unmatured interest.

Upon enacting § 502(b)(2) of the Bankruptcy Code, Congress codified the well-settled bankruptcy principle that an unsecured creditor is not entitled to post-petition interest. 11 U.S.C. § 502(b)(2); H.R. 95–595, 95th Cong., 1st Sess., 352–354 (1977) (claim for unmatured interest as of the date of the petition is not allowable); *Ionosphere,* 134 B.R. at 531; *see also United Sav. Ass'n v. Timbers of Inwood Forest,* 484 U.S. 365, 372–73, 108 S.Ct. 626, 630–31, 98 L.Ed.2d 740 (1988). This principle is embodied in § 506(b), which provides that a creditor is only entitled to post-petition interest on the allowed secured portion of its claim:

> (b) To the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or

---

4. *See* Part III of the instant findings of fact and conclusions of law.

charges provided for under the agreement under which such claim arose.

The plain meaning behind § 506(b) is that only oversecured creditors can claim post-petition interest against an insolvent bankruptcy estate in connection with their claims. Congress did not similarly provide for inclusion of post-petition interest as part of unsecured claims or as to the unsecured portion of a secured debt against an insolvent estate. If Congress intended similar treatment as between creditor types, it could have easily provided for same.[5] In *United Savings Association v. Timbers of Inwood Forest Associates Ltd.*, the United States Supreme Court concluded that since § 506(b) only permits allowance of post-petition interest out of the security cushion, the undersecured creditor, who has no cushion or equity, falls within the general prohibition against allowing post-petition interest. 484 U.S. 365, 372–73, 108 S.Ct. 626, 630–31, 98 L.Ed.2d 740 (1988).

Therefore, pursuant to § 502 and § 506 of the Code, the instant unsecured senior debentureholders have no claim against the insolvent Debtor for payment of post-petition interest.[6]

### IV. The Plain Meaning of 11 U.S.C. § 502 and § 506 Warrants Denial of Attorney Fees and Costs Incurred Post–Petition In Connection With An Unsecured Claim Against An Insolvent Estate

■ Pursuant to § 502, the Court shall determine a claim as of the date the bank-ruptcy petition was filed once an objection to the claim has been raised. In the instant case, the filing of the instant adversary proceeding is, in essence, an objection to the senior debentureholders' claim for post-petition interest, interest on interest and attorney fees and costs. Therefore, the Court must determine the senior debentureholders' claim as it relates to attorney fees and costs only, since the Court has separately disposed of the post-petition interest and interest on interest issues. *See* Parts II, III and V of the instant findings of fact and conclusions of law.

■ Pursuant to the pertinent language of § 506(b) regarding the recovery of attorney fees and costs against an insolvent estate,[7] it is clear that only an oversecured creditor is allowed recovery for same if attorney fees and costs are reasonable and were accounted for in an agreement under which the claim arose. *Equitable Life Assurance Society v. Sublett (In re Sublett)*, 895 F.2d 1381 (11th Cir.1990) (citing *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)).

■ Additionally, if Congress intended to treat oversecured and unsecured debts similarly with respect to the allowance of attorney fees and costs against an insolvent estate, it would have specifically provided for the same treatment. In furtherance of this proposition, the bankruptcy court in *In re*

---

**5.** Three exceptions to the general prohibition on post-petition interest have long been recognized:

(1) Courts allow post-petition interest where the debtor ultimately proves to be solvent;

(2) Courts allow post-petition interest to secured creditors when the secured property generates income; and

(3) Courts allow post-petition interest on secured claims when the value of the security exceeds both the principal and the interest due. *Equitable Life Assurance Society v. Sublett (In re Sublett)*, 895 F.2d 1381, 1386 n. 10 (11th Cir. 1990); *Liberty Nat'l. Bank and Trust Co. of Louisville v. George*, 70 B.R. 312, 314 (W.D.Kentucky 1987) (citing to *In re Securities Investor Protection Corp. v. Ambassador Church Finance/Development Group*, 788 F.2d 1208, 1211, n. 4 (6th Cir.1986)).

None of the aforementioned three exceptions apply in the instant case, thus, any further analysis regarding these exceptions is unnecessary.

**6.** In the instant case, in light of the foregoing, there can be no post-petition interest for unsecured claims unless the Chapter 7 estate became solvent. If the estate were solvent, then junior debentureholders' post-petition interest would be subordinated to the payment of senior debentureholder post-petition interest. Yet, senior debentureholders could only be entitled to post-petition interest once all claims of the estate, including late filed claims and claims for punitive damages, fines, penalties and the like, have been paid in full, in accord with 11 U.S.C. § 726(a).

**7.** *See* language of § 506(b), reprinted in Part III (pages 461–62) of the instant findings of fact and conclusions of law.

*Sakowitz, Inc.*[8] utilized a maxim of statutory interpretation called "expressio unius est exclusio alterius," which signifies that the expression of one thing is the exclusion of another, i.e., since Congress only provided for attorney fees and costs in connection with oversecured claims, it did not intend to allow attorney fees and costs for unsecured or undersecured claims. 110 B.R. at 272. The *Sakowitz* court further found that:

> When [the maxim is] coupled with ... § 502(b) ... it is clear that the statutory scheme provided for by the Congress in the Bankruptcy Code excludes attorney fees earned post-petition on unsecured proofs of claim or on the unsecured portion of a secured claim notwithstanding any contractual (or statutory) provision which would allow such fees outside of bankruptcy.[9]

110 B.R. at 272.

Although there is much case-law in support of this Court's ruling that attorney fees and costs are forbidden as part of an unsecured debt in an insolvent estate,[10] various Circuit Courts of Appeal have held otherwise. However, all of these cases are distinguishable in that many of these cases were either decided based on pre–Code law[11] or failed to consider the plain meaning of § 506(b). A case in point, upon which many post-Code courts rely, is the Second Circuit's case of *In re United Merchants & Manufac-*

*turers, Inc.*, in which the Second Circuit held that an unsecured creditor was entitled to post-petition attorney fees and costs from an insolvent estate, since the parties had bargained for a provision for recovery of collection costs in a prior agreement. 674 F.2d 134 (2nd Cir.1982). Although the *Merchants* Court decided the issues before it based on pre–Code law, the Court discussed § 506(b) in dicta, as that section had already been enacted by the time the *Merchants* opinion was written. *Merchants*, 674 F.2d at 138. Specifically, the *Merchants* Court determined that the Bankruptcy Code and legislative history failed to shed light on the status of an undersecured creditor's contractual claims for attorney fees and costs. Thus, the *Merchants* Court interpreted § 506(b) as merely codifying the pre–Code right of oversecured creditors to recover contractual attorney fees and was not intended to change the pre–Code decisions allowing undersecured and oversecured creditors to recover contractual attorney fees.[12] However, as previously explained, the clear import of the statutory language contained in § 506(b) supports a different interpretation, which this Court adopts.

Given the foregoing, since the instant creditors possess unsecured claims, they are not entitled to recover attorney fees and costs incurred post-petition against the insolvent estate.

---

**8.** *Sakowitz v. Chase Bank International (In re Sakowitz, Inc.)*, 110 B.R. 268 (Bankr.S.D.Tex. 1989).

**9.** Implicitly, the *Sakowitz* court found that § 506(b) refers to attorney fees and costs incurred post-petition. At least two other bankruptcy courts are in accord. *See In re Woodmere Investors Limited Partnership*, 178 B.R. 346 (Bankr.S.D.N.Y.1995); *In re Schriock Construction, Inc.*, 176 B.R. 176 (Bankr.D.North Dakota 1994) ("Section 506 ... allows a holder of an oversecured claim to enhance its claim with interest as well as recover, **in addition to the prepetition amount of the claim, attorney's fees**....") (emphasis added).

This Court agrees with the aforementioned interpretation by the three bankruptcy courts that § 506(b) references allowance of attorney fees and costs incurred post-petition.

**10.** *See In re Woodmere Investors Limited Partnership*, 178 B.R. 346 (Bankr.S.D.N.Y.1995); *In re Saunders*, 130 B.R. 208 (Bankr.W.D.Va.1991); *In re Sakowitz, Inc.*, 110 B.R. 268 (Bankr.S.D.Tex. 1989); *In re Canaveral Seafoods, Inc.*, 79 B.R. 57, 58 (Bankr.M.D.Fla.1987); *In re Mobley*, 47 B.R. 62, 63 (Bankr.N.D.Ga.1985); and *In re Woerner*, 19 B.R. 708, 713 (Bankr.D.Kan.1982).

**11.** The reference to pre-Code law means the law in effect under The Bankruptcy Act prior to the Bankruptcy Reform Act of 1978, i.e., the Bankruptcy Code.

**12.** This Court also notes that the precedent otherwise established by *LeLaurin v. Frost National Bank Of San Antonio*, 391 F.2d 687 (5th Cir. 1968), where the Court similarly allowed an unsecured creditor post-petition attorney fees and costs, is diminished in light of the *LeLaurin* case having been decided based on pre-Code law.

### V. Attorney Fees and Costs Incurred Pre–Petition In Connection With An Unsecured Claim Constitutes A Claim Against An Insolvent Estate

■ This Court finds that attorney fees and costs incurred pre-petition are treated differently since § 506(b) addresses post-petition incurred attorney fees and costs and only entitles oversecured creditors to same if provided for by agreement. There is no similar limitation in § 502 or § 506 regarding a prohibition of attorney fees and costs incurred pre-petition and, in fact, many courts have ruled that absent a bankruptcy filing, an otherwise valid attorney fees and costs provision under state law, must be enforced. As one bankruptcy court explained:

> The award of attorney's fees under a private agreement in a bankruptcy proceeding is simply a question of the nature and extent of property rights, a matter generally to be determined in accordance with state rather than federal law.... Consequently, absent an identifiable federal interest which compels a different result, there is no sound reason why property interests should be analyzed or treated differently simply because of the advent of bankruptcy.

*In re Schriock Constr., Inc.,* 176 B.R. 176, 179 (Bankr.D.N.Dak.1994) (citing *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979)). Indeed, under *Ron Pair,* attorney fees are wholly dependent upon the existence of a contractual agreement permitting their recovery. 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) (under Section 506(b) "[r]ecovery of fees, costs and charges ... is allowed only if they are reasonable and provided for in the agreement under which the claim arose").

This Court agrees with the aforementioned rulings as they relate to the allowance of attorney fees and costs incurred pre-petition since an interpretation as to the rulings condoning the allowance of attorney fees and costs incurred post-petition in connection with an unsecured claim, would be antithetical to the clear language of § 506(b) disallowing post-petition incurred attorney fees and costs for all claimants other than oversecured ones. Thus, to the extent that the attorney fees and costs in question were incurred pre-petition, the Court finds that same is allowable as part of the pre-petition senior debt and shall be afforded the same treatment in the distribution scheme as given to senior debentureholders' pre-petition principal and pre-petition interest. As a consequence, junior debentureholders will be subordinated to the payment of the senior debentureholders' pre-petition incurred attorney fees and costs, just as they are subordinated to the senior pre-petition claim for principal and interest.

### VI. An Award of Post–Petition Interest From Monies Otherwise Payable to Junior Debentureholders Can Only Arise From Explicit Language Contained in the Indenture Trusts

■ As previously established, the senior debentureholders, as unsecured creditors, do not have a claim against the Debtor's insolvent estate for payment of post-petition interest or for attorney fees and costs pursuant to § 502 and § 506 of the Bankruptcy Code. However, senior debentureholders may have a contractual right to payment of post-petition interest from monies otherwise payable to the junior debentureholders, if the language of the Indentures specifically provide for such a contractual right. The issue presented to the Court is one of contract interpretation, namely, whether the Indentures contain language sufficient in clarity to support an interpretation that the junior debentureholders intended and agreed to pay from their own distributions, sums to the senior debentureholders that are not otherwise due and owing from the obligor, the Debtor's estate.

Courts interpreting the rights and obligations between senior and junior debentureholders under indentures with similar, if not identical, language have unanimously required express contractual language to clearly, explicitly, precisely, and unambiguously provide for payment of post-petition interest to unsecured senior debentureholders when such amounts were not otherwise due and owing from the obligor. *Continental Ill. Nat'l Bank & Trust Co. v. First Nat'l City*

465

Bank (Matter of King Resources Co.), 528 F.2d 789 (10th Cir.1976); Bankers Life Co. v. Manufacturers Hanover Trust (In re Kingsboro Mortgage Corp.), 514 F.2d 400 (2d Cir. 1975); Matter of Time Sales Fin. Corp., 491 F.2d 841 (3rd Cir.1974). This requirement that the indenture language clearly, explicitly, precisely, and unambiguously provide for payment of post-petition interest when such amounts were not due and owing has become known as the Rule of Explicitness, which requires notice of precisely to what obligations one is agreeing to subordinate before that particular subordination will be enforced. First Fidelity Bank, N.A., N.J. v. Midlantic Nat'l Bank (In re Ionosphere Clubs, Inc.), 134 B.R. 528 (Bankr.S.D.N.Y. 1991).

The Rule of Explicitness, is not a "rule of judicial reallocative equity" as posited by the Plaintiffs. Instead, it is a rule of contract construction that requires a junior creditor to receive clear and unambiguous notice before a Court will imply an intent to subordinate to amounts not otherwise due and owing under applicable law. Id. If junior creditors are to subordinate to payment of amounts not lawfully due and owing under applicable law, a result not implicit in a consent to subordinate, then they must have prior notice in the form of clear and unambiguous contractual language providing for such an otherwise unexpected result. No fewer than three Courts of Appeals and the Bankruptcy Court for the Southern District of New York, applying the Rule of Explicitness, have unanimously rejected the precise claim pursued here by the Plaintiffs in cases involving virtually identical subordination language. Id. passim.

The Plaintiffs argue, in an attempt to avoid the Rule of Explicitness, that Congress overruled the Rule of Explicitness in enacting § 510 of the Bankruptcy Code. The Plaintiffs have cited no authority, however, to support this argument. To the contrary, applicable case law and respected treatises agree with this Court that § 510 of the Bankruptcy Code codified pre–Code case law in which courts uniformly enforced subordination agreements according to their terms. King Resources, 528 F.2d 789 (10th

Cir.1976); Kingsboro, 514 F.2d 400 (2d Cir. 1975); Time Sales, 491 F.2d 841 (3rd Cir. 1974); Ionosphere, 134 B.R. 528 (Bankr. S.D.N.Y.1991); 3 Collier on Bankruptcy § 510.01. There is no legislative history to support the notion that Congress intended to overrule either the Pre–Code case law or the Rule of Explicitness. The Bankruptcy Court for the Southern District of New York expressly considered and rejected the Plaintiffs' argument that by enacting § 510 of the Code, Congress implicitly overruled both the Rule of Explicitness and precedent case law applying it. Ionosphere, 134 B.R. 528, 531 (Bankr.S.D.N.Y.1991). In Ionosphere, a case decided under the Bankruptcy Code, the Bankruptcy Court held that the Rule of Explicitness is not inconsistent with § 510 and that it retains its vitality. Id. Thus, as more fully set forth below, this Court holds that enactment of § 510 of the Code did not overrule the Rule of Explicitness or the case law thereunder, and that subordination agreements are enforceable under nonbankruptcy law in accordance with their contractual terms.

The claim that unsecured senior creditors are entitled to payment of post-petition interest from distributions otherwise payable to junior creditors has been rejected by each of the three Courts of Appeals and the Bankruptcy Court that has been presented with the issue. Without exception, courts applying the Rule of Explicitness have held that an indenture will not be read to alter the well-settled principle that interest stops accruing upon the filing of the petition unless the language clearly, explicitly, precisely, and unambiguously provides for such a result. These cases, decided under the Act as well as the Code, have all involved subordination provisions materially indistinguishable from those presented here.

The Rule of Explicitness requires that the language of a subordination provision must clearly, explicitly, precisely, and unambiguously provide for payment of post-petition interest to unsecured seniors before courts will abrogate otherwise long-standing applicable principles prohibiting payment of post-petition interest to unsecured creditors. Ionosphere, 134 B.R. at 533. The bankrupt-

cy court in *Ionosphere* held that one may not infer subordination to post-petition interest:

> If a creditor desires to establish a right to post-petition interest and a concomitant reduction in the dividends due to subordinated creditors, the agreement should clearly show that the general rule that interest stops on the date of the filing of the petition is to be suspended.

*Ionosphere*, 134 B.R. at 533 (quoting *Time Sales*, 491 F.2d at 844); *see also Kingsboro*, 514 F.2d at 401 (adopting the Rule of Explicitness established in *Time Sales* requiring unambiguous language in the subordination provision in order for unsecured senior creditors to receive post-petition interest from distributions otherwise payable to subordinated creditors); *King Resources*, 528 F.2d at 792 (adopting the Rule of Explicitness established in *Time Sales* and followed in *Kingsboro* and finding that subordination provisions did not "clearly show" the unsecured senior lenders were entitled to post-petition interest). Moreover, in applying the Rule of Explicitness, in *Ionosphere*, *Time Sales*, *Kingsboro*, and *King Resources*, courts have uniformly rejected the claims of unsecured senior creditors for payment of post-petition interest. *King Resources*, 528 F.2d at 791–92; *Kingsboro*, 514 F.2d at 402; *Time Sales*, 491 F.2d at 843; *Ionosphere*, 134 B.R. at 535. While recognizing that subordination agreements are fully enforceable according to their terms, each court has strictly applied the Rule of Explicitness when interpreting subordination language in the context of an unsecured creditor's claim to post-petition interest.

In *Time Sales*, the Third Circuit considered an undersecured senior creditor's claim to post-petition interest based on a subordination provision that called for, "all principal and interest owing on all superior indebtedness of the company [to] be paid in full before any payment is made on Five Year Debenture Notes." *Id.* at 842. The Third Circuit affirmed the District Court's holding that senior creditors were not entitled to be paid post-petition interest out of the principal due on the subordinated debt. Noting "the general rule that 'everything stops' at the date the petition is filed," the Third Circuit

held that the subordination provision before it was not sufficiently explicit to support payment of post-petition interest to unsecured senior creditors. *Id.* at 844. The Third Circuit stated:

> If a creditor desires to establish a right to postpetition interest and a concomitant reduction in the dividends due to subordinated creditors, the agreement should clearly show that the general rule that interest stops on the date of the filing of the petition is to be suspended, at least vis-a-vis these parties.

*Id.*

In *Kingsboro*, the Second Circuit, following *Time Sales*, affirmed the district court's rejection of the senior debentureholder's argument that the subordination provision required priority payment of post-petition interest on senior debt. 514 F.2d at 402. The agreement in *Kingsboro* provided: "In the event of any insolvency, bankruptcy, liquidation, reorganization or other similar proceedings . . . all principal and interest on all Senior Debt shall first be paid in full . . . before any payment on account of principal or interest is made [to junior debentureholders]." 379 F.Supp. 227, 228–29 (S.D.N.Y. 1974), *aff'd*, 514 F.2d 400 (2d Cir.1975). The district court held that this particular provision was not sufficiently explicit to permit its enforcement after the filing of bankruptcy stopped interest from accruing, finding the provision was not:

> as sufficiently clear and explicit as would preclude the operation of the general and accepted rule that "everything stops" on such date as the petition in bankruptcy is filed. . . . *[P]recise, explicit* and *unambiguous* language must be contained in the subordination agreement to the effect that the contract abrogates the general rule regarding interest, in order that a right to "postpetition" interest [on senior debt] prior to the payment of dividends to junior creditors may be established.

*Id.* at 231 (emphasis added).

On appeal, the Second Circuit affirmed, holding that the language of the subordination provision was "insufficiently express to relate to post-bankruptcy interest." 514 F.2d at 401. The Second Circuit also

stressed the need for "express," "explicit" and "unambiguous" language before it would interpret such provisions as subordinating junior debentureholders' right to principal to the payment of post-petition interest on senior debt when the total obligation was undersecured. *Id.*

Similarly, in *King Resources,* the district court held that the following provision—one almost identical to the subordination provisions presented here—was too ambiguous to create a right to post-petition interest:

> The holders of all Senior Indebtedness shall first be entitled to receive payment in full of the principal thereof (and premium, if any) and interest due thereon before the holders of the Debentures are entitled to receive any payment on account of the principal of (or premium, if any) or interest on the [subordinated] Debentures.

385 F.Supp. 1269, 1274 (D.Colo.1974), *aff'd,* 528 F.2d 789 (10th Cir.1976). The district court stated that "[a]rguably, perhaps, the ... Indentures can be read the way the [senior creditors] want to read them, but they can also be read as failing to tell the debentureholders that they would have to pay the [senior creditors] post-petition interest in the event of reorganization." *Id.* at 1281.

The Tenth Circuit affirmed and noted its agreement with the "reasoning and the result" reached in *Kingsboro* and *Time Sales.* 528 F.2d at 791. The Tenth Circuit also rejected the senior lenders' argument that, despite the bankruptcy rule against awarding post-petition interest on undersecured debt, they should be paid such interest because it would be paid by the junior lenders, not by the debtor, *Id.* at 791–92, holding:

> In the instant case, the indentures do not "clearly show" that the senior lenders are entitled to postpetition interest at the expense of the debentureholders. Hence, in line with *Kingsboro* and *Time Sales,* the trial court did not err ... in following the general rule that interest stops on the date of the filing of a petition in bankruptcy.

*Id.* at 792.

Finally, in *Ionosphere,* the only case on point decided under the Code, the underse-cured senior creditor unsuccessfully relied on the definition of "senior indebtedness," which included the phrase "post-petition interest" and which was incorporated by reference in the subordination provision of the indenture. *Ionosphere,* 134 B.R. at 535 ("all amounts owing ... including post-petition interest"). The bankruptcy court found this language "ambiguous", because junior creditors could not have anticipated that they would be subordinate to the otherwise unallowable claims of the undersecured senior creditor for post-petition interest. The bankruptcy court reasoned that, because the senior creditor's claim was not allowable under applicable law, the junior creditors could not have intended to pay what was otherwise not a lawful debt owed to the senior creditor. *Id.* at 535.

As an illustration of the type of express language necessary to satisfy the Rule of Explicitness, the bankruptcy court quoted the language from another indenture which—unlike those presented here—provided:

> Upon any distribution to creditors of the Company in a liquidation ... holders of Senior Debt shall be entitled to receive payment in full of all Obligations with respect to the Senior Debt (including interest after the commencement of any such proceeding at the rate specified in the applicable Senior Debt, *whether or not such interest is an allowable claim in any such proceeding* ) ....

*Id.* at 535 n. 14. Because the indenture at issue in *Ionosphere* mentioned only "post-petition interest", the bankruptcy court found that the language of the subordination provision of the indenture did not satisfy the Rule of Explicitness. *Id.* at 535. Here, unlike in *Ionosphere,* the phrase "post-petition interest" does not appear at all in the relevant subordination provisions of the Indentures.

A comparison of the relevant definition of "Senior Indebtedness" and operative subordination provision in each Indenture, shows that these provisions make no reference whatsoever to the payment of post-petition interest. In fact, a careful comparison of the language of these Indentures to those at issue in *Ionosphere, Time Sales, Kingsboro,*

and *King Resources* reveals weaknesses in the Plaintiffs' claim. Here, the language presented is less explicit than that at issue in *Ionosphere,* where the bankruptcy court found the definition of "senior indebtedness," which included the phrase "post-petition interest," ambiguous. *Ionosphere,* 134 B.R. at 535. Therefore, In the instant case, since the Indentures do not reference post-petition interest in the subordination provisions, the junior debentureholders had no notice that the monies they were due might be subordinated to payments that were not otherwise due and owing from the obligor under applicable law, in effect, making the junior debentureholders guarantors of those obligations, rather than merely subordinate to the senior debentureholders' rights under certain of those obligations.

Under the 1984 Indenture, the 1985 Indenture, the 1987 Indenture, and the 1989 Indenture, "Senior Indebtedness" is defined as "any indebtedness of the Company for money borrowed, whether *outstanding* on the date of execution of this Indenture or *thereafter created, assumed or incurred....*" (emphasis added).[13] Because under § 502 and § 506 of the Code, the Debtor is not indebted to unsecured senior debentureholders for post-petition interest, the indebtedness for post-petition interest cannot properly be said to be "outstanding."

In the instant case, substituting the definition of the term "Senior Indebtedness" into the operative subordination provision of § 11.01 of the 1984 Indenture and 1985 Indenture and § 1301 of the 1987 Indenture and 1989 Indenture, reveals the flaw in the Plaintiffs' position:

> in the case of any ... liquidation ... *all obligations* to holders of ["any indebtedness of the Company for money borrowed, whether outstanding on the date of execution of this Indenture or thereafter created, assumed or incurred...."] shall be entitled to be paid in full before any payment shall be made on account of [holders of junior debt] (emphasis added).

In the instant case, for the very same reason noted above, the phrase "all obligations" cannot be said to include an unsecured creditor's claim to post-petition interest when such amount is not otherwise due and owing under § 502 and § 506 of the Code.

Although the Plaintiffs argue otherwise, the 1972 Indenture is not materially distinguishable from the other Indentures in that a right to payment of post-petition interest is not set forth or otherwise provided for. Section 4.03 of the 1972 Indenture provides in pertinent part:

> Upon ... liquidation ... all principal, premium, if any, and interest due or *to become due* upon all Senior Indebtedness shall first be paid in full.... (emphasis added).

The Plaintiffs particular reliance on the phrase "to become due" is simply misplaced in that post-petition interest on an unsecured claim can never "become due" under § 502 and § 506 of the Code.

Under the Rule of Explicitness, there is no right to post-petition interest otherwise not due and owing under applicable law, unless express language in the indenture so provides. Here, the Plaintiffs cannot cite any language in the Indentures that makes any reference whatsoever to payment of post-petition interest. This Court cannot ignore the fundamental and, herein, legally dispositive distinction between the treatment afforded pre-petition and post-petition interest under the Code.

For the reasons set forth above, the plain language of the subordination provisions in the instant Indentures simply does not satisfy the Rule of Explicitness.

The heart of the Plaintiffs' argument is that § 510 of the Code has overruled the Rule of Explicitness. The Plaintiffs, however, have failed to provide any case law or any other authority to support this critical component of their argument. Under § 510, courts are not bound to enforce subordination provisions beyond their express terms or intended meaning, but instead, are autho-

---

**13.** Under the 1972 Indenture, "Senior Indebtedness" is defined slightly differently as, "all indebtedness for money borrowed incurred by the Company, whether outstanding on the date of execution of this Indenture, or thereafter created, assumed, or incurred...." This difference in language is immaterial.

rized to enforce them under applicable non-bankruptcy law. Section 510 does not create rights that otherwise do not exist.

■ Plaintiffs' argument that Congress implicitly intended to overrule the Rule of Explicitness, which had been followed by three Courts of Appeal in *Time Sales, Kingsboro,* and *King Resources,* is contrary to fundamental principles of statutory interpretation. As the Supreme Court has held, courts are never to assume an intent of Congress to overrule governing case law absent express language to the contrary:

> The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific.

*Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection,* 474 U.S. 494, 501, 106 S.Ct. 755, 759, 88 L.Ed.2d 859 (1986) (citing *Edmonds v. Compagnie Generale Transatlantique,* 443 U.S. 256, 266–67, 99 S.Ct. 2753, 2759–60, 61 L.Ed.2d 521 (1979)). Particularly in bankruptcy cases, the Supreme Court rigorously applies this rule of statutory interpretation. *Dewsnup v. Timm,* 502 U.S. 410, 419, 112 S.Ct. 773, 779, 116 L.Ed.2d 903 (1992) ("when Congress amends the bankruptcy laws, it does not write 'on a clean slate' ... [therefore] this Court has been reluctant to accept arguments that would interpret the Code ... to effect a major change in pre–Code practice that is not the subject of at least some discussion in the legislative history."); *see also Pennsylvania Dep't of Public Welfare v. Davenport,* 495 U.S. 552, 562, 110 S.Ct. 2126, 2133, 109 L.Ed.2d 588 (1990) ("We will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure.") (citing *Kelly v. Robinson,* 479 U.S. 36, 47, 107 S.Ct. 353, 359, 93 L.Ed.2d 216 (1986)).

[16] Moreover, the "party contending that legislative action changed settled law has the burden of showing that the legislature intended such a change." *Green v. Bock Laundry Machine Co.,* 490 U.S. 504, 521, 109 S.Ct. 1981, 1991, 104 L.Ed.2d 557 (1989). Here, application of these basic rules of statutory interpretation repudiates the Plaintiffs'

argument that § 510 was intended by Congress to jettison the Rule of Explicitness, which had been followed in *Time Sales, Kingsboro,* and *King Resources.*

The Plaintiffs have not provided any support for their contention that Congress intended to overrule *Time Sales, Kingsboro,* and *King Resources* by enacting § 510. There is nothing in the legislative history of § 510 to suggest that Congress, in enacting § 510 of the Code, had any intent to overrule the Rule of Explicitness. Plaintiffs have not cited this Court to any legislative history to support their contention that § 510(a) has statutorily overruled *Time Sales* and its progeny. The House or Senate reports contain no such reference whatsoever. House Report No. 95–595, 95th Cong., 1st Sess. 359 (1977); Senate Report No. 95–989, 95th Cong., 2d Sess. 74 (1978) U.S.Code Cong. & Admin.News 1978 pp. 5787, 5860.

■ To the contrary, a respected bankruptcy treatise has noted that:

> Section 510 of the Code is a provision that had no parallel under the former Bankruptcy Act. This section gives statutory authorization for the subordination of claims. *The law in this area is of long standing, having been judicially created.*
>
> Section 510 is divided into three subsections. Subsection (a) specifies that a subordination agreement is enforceable "to the same extent that such agreement is enforceable under applicable nonbankruptcy law." *This subsection codifies judicial practice under the Act in which such agreements were enforced.*

3 *Collier on Bankruptcy* § 510.01 (15th ed.1993) (citations omitted) (emphasis added). Similarly, bankruptcy courts have uniformly so held. *In re Hart Ski Mfg. Co.,* 5 B.R. 734, 735 (Bankr.D.Minn.1980) (§ 510(a) "codifies what was existing case law under the prior Bankruptcy Act") (citing *In re Credit Industrial Corp.,* 366 F.2d 402 (2d Cir.1966)); *In re Leasing Consultants, Inc.,* 2 B.R. 165, 168 n. 1 (Bankr.E.D.N.Y.1980) (same). The Bankruptcy Court in *Ionosphere* expressly found that, even after the enactment of § 510, "*Kingsboro* retains its vitality and remains the controlling law in the Second Cir-

cuit." *In re Ionosphere Clubs, Inc.,* 134 B.R. at 534. Indeed, *Credit Industrial,* which was the leading case under the Bankruptcy Act and was widely perceived as the basis for § 510(a), was decided prior to and referenced in *Kingsboro* and *King Resources. Kingsboro,* 379 F.Supp. at 230; *King Resources,* 385 F.Supp. at 1280; *see also Hart Ski,* 5 B.R. at 735; *In re W.T. Grant Co.,* 4 B.R. 53, 74 n. 2 (Bankr.S.D.N.Y.1980); *see also* 3 *Collier on Bankruptcy* ¶ 510.01 (15th ed.1993).[14]

Section 510 merely recognizes the well-settled principle followed by the Courts under the Act that subordination agreements are valid and fully enforceable according to their terms. No party to this dispute has contended otherwise. The enactment of § 510 cannot have been intended by Congress to now compel courts to enforce subordination provisions beyond their express terms or their intended meaning. The Rule of Explicitness and applicable case law thereunder still govern the issues presented here.

In arguing that § 510 permits the Plaintiffs to be paid post-petition interest and interest on interest that they are not otherwise entitled to, the Plaintiffs have cited an Eleventh Circuit case, *In re Sublett,* 895 F.2d 1381 (11th Cir.1990), for the proposition that this Court is bound by the provisions of the Bankruptcy Code. In *Sublett,* the Eleventh Circuit applied Alabama law, which governed the loan documents, in deciding the holder of an oversecured claim was entitled to post-petition interest under § 506 of the Bankruptcy Code, and to compound interest under applicable Alabama law. *In re Sublett,* 895 F.2d at 1385 & n. 9. In *Sublett* the loan instruments were governed by Alabama law, which permitted compound interest, and the claim was oversecured, and entitled to post-petition interest under § 506—unlike here, where the senior debentureholders are unsecured, and not entitled to post-petition interest under § 506, and where the Indentures

are governed by New York law, which provided at the time the Indentures were executed that contractual provisions for compound interest are void as violative of New York public policy. In observing that it was bound by the Bankruptcy Code, the Eleventh Circuit merely declined to avoid the payment of interest under equitable principles where it was otherwise permitted under § 506 and applicable state law governing the contract. *Id.* This Court is bound by the provisions of the Bankruptcy Code, and it is equally bound by the longstanding uniform precedent interpreting those provisions which includes the Rule of Explicitness.

In *Ionosphere,* the bankruptcy court rejected the precise argument now asserted by the Plaintiffs by holding that the Rule of Explicitness and applicable case law thereunder remained good law under § 510 of the Code. *Ionosphere,* 134 B.R. at 534. In *Ionosphere,* the bankruptcy court expressly rejected the argument that *Time Sales, Kingsboro,* and *King Resources* are "inconsistent with § 510 in that the burden of explicitness placed on seniors attempting to establish rights to post-petition interest is too great". *Id.* at 533. Instead, the bankruptcy court held that the Rule of Explicitness, established in those cases is consistent with § 510 and therefore remains controlling case law. Then, applying the Rule of Explicitness, the bankruptcy court found that the language of the subordination provisions in that indenture was ambiguous and failed to properly alert the junior debentureholders that the senior debentureholders could receive payment of post-petition interest despite the fact such amounts were not owing by the Debtor under applicable sections of the Code. *Ionosphere,* 134 B.R. at 535.

· Because the Rule of Explicitness, and applicable case law thereunder, including *Time Sales, Kingsboro, King Resources,* and *Ionosphere,* remain good law under § 510, the Plaintiffs have the burden of showing express

---

14. Bankruptcy Code § 502(b)(2) and § 506(b), allowing post-petition interest only to the extent that a claim is oversecured, also codify pre-Code bankruptcy law. *United Sav. Ass'n v. Timbers of Inwood Forest,* 484 U.S. at 373, 108 S.Ct. at 631. Today, as under pre-Code law, post-petition interest from an insolvent debtor's estate is due or

owing only when a claim is oversecured. *See Vanston Bondholders Protective Comm. v. Green,* 329 U.S. 156, 164, 67 S.Ct. 237, 240, 91 L.Ed. 162 (1946); *In re Inland Gas Corp.,* 241 F.2d 374, 379 (6th Cir.), *cert. denied,* 355 U.S. 838, 78 S.Ct. 35, 2 L.Ed.2d 50 (1957).

language from the Indentures that clearly, explicitly, precisely, and unambiguously provides for payment of post-petition interest otherwise not due and owing to unsecured senior debentureholders before any payments are to be made to junior debentureholders. In the instant case, Plaintiffs have failed to point to any language or reference in the Indentures that provides a right to payment of post-petition interest from monies otherwise payable to the junior debentureholders.

### VII. An Award for Post–Petition Attorney Fees and Costs From Monies Otherwise Payable to Junior Debentureholders Can Only Arise From Explicit Language Contained in the Indenture Trusts

Since § 506(b), read in conjunction with § 502, only authorizes an award of attorney fees and costs incurred post-petition for an oversecured creditor as against an insolvent estate, this Court finds that, similarly, as regards the allowance of attorney fees and costs to be assessed against junior debt distributions for the benefit of senior debentureholders, subordination should only be allowed if there is explicit language in the Indenture agreements and subordination provisions accounting for allowance of post-petition incurred attorney fees and costs.

Thus, just as junior debentureholders must be put on notice via explicit language that their interests are subordinated to the senior debt's post-petition interest since post-petition interest in connection with an unsecured claim is not allowable, the junior debentureholders must also be put on notice via explicit language that their interests are subordinated to the senior debt's post-petition incurred attorney fees and costs, since post-petition fees and costs in connection with an unsecured claim are not allowable.

Specifically, the Senior Indenture provides that the Senior Trustee is entitled to "such further amount as shall be sufficient to cover the costs and expenses of collection, including reasonable compensation to the Trustee and each predecessor trustee, their respective agents, attorneys and counsel ..." Senior Indenture § 5.2. Although the Plaintiffs argue that the payment of costs and fees in prosecuting this action constitutes "Senior Indebtedness" as defined in the Subordinated Indentures because prosecution of this collection action is part and parcel of that indebtedness, the aforementioned language is not explicit as to the allowance of attorney fees and costs incurred post-petition. It only refers to the collection of attorney fees and costs in general. Accordingly, the senior debentureholders cannot be paid post-petition attorney fees and costs from distributions that would otherwise have gone to junior debentureholders.

In light of the foregoing analysis, it is hereby:

**ORDERED AND ADJUDGED** that:

1. The Plaintiffs' motion for summary judgment is granted in part and denied in part. The Defendants' cross motion for summary judgment is granted in part and denied in part.

2. The Plaintiffs are not entitled to interest on interest, post-petition interest or attorney fees and costs incurred post-petition. Plaintiffs are entitled to pre-petition attorney fees and costs as part of their pre-petition claim.

3. The Trustee's cross motion for partial summary judgment is moot in light of the foregoing.

4. The Court shall enter a separate Final Judgment in accord with the foregoing, on even date.

**DONE AND ORDERED.**

### FINAL JUDGMENT

**THIS CAUSE** came before the Court upon the Motion for Summary Judgment and Memorandum of Law in Support Thereof (the "Motion"), filed by the Plaintiffs, Chemical Bank, as successor by merger to Manufacturers Hanover Trust Company, as Indenture Trustee (the "Senior Trustee"), and Gabriel Capital, L.P., an unsecured holder of a significant percentage of the senior notes ("Gabriel Capital"; together, the "Plaintiffs"); the Cross Motion for Summary Judgment, Statement of Undisputed Facts, and

472

Memorandum of Law in Support Thereof; and Response in Opposition to Plaintiffs' Motion for Summary Judgment and Memorandum of Law in Support Thereof (the "Cross Motion"), filed by Defendants, First Trust of New York, National Association, as successor in interest to Morgan Guaranty Trust Company of New York, as Indenture Trustee, and The Bank of New York, as Indenture Trustee (together, the "Indenture Trustees"); the Cross Motion For Partial Summary Judgment as to Liability of Insolvent Estate for Payment of Post–Petition Interest and Interest on Interest (the "Cross Motion for Partial Summary Judgment"), filed by William A. Brandt, Jr., the Chapter 7 Trustee (the "Trustee"); the Plaintiffs' Reply Memorandum of Law in Further Support of Its Motion for Summary Judgment and in Opposition to Defendants' Cross Motion for Summary Judgment (the "Reply"); and the Defendants' Response and Memorandum of Law in Opposition to Plaintiffs' Reply in Further Support of Its Motion for Summary Judgment (the "Response"). The Court has entered Findings of Fact and Conclusions of Law Granting in Part and Denying in Part Plaintiffs' Motion For Summary Judgment, Granting in Part and Denying in Part Defendants' Cross Motion For Summary Judgment and Declaring As Moot the Trustee's Cross Motion For Partial Summary Judgment, on even date. In light of the foregoing, it is hereby:

**ORDERED AND ADJUDGED** that:

1. The Plaintiffs' motion for summary judgment is granted in part and denied in part. The Defendants' cross motion for summary judgment is granted in part and denied in part.

2. Plaintiffs are not entitled to interest on interest, post-petition interest or attorney fees and costs incurred post-petition. Plaintiffs are entitled to pre-petition attorney fees and costs as part of their pre-petition claim.

3. The Trustee's cross motion for partial summary judgment is moot in light of the foregoing.

**DONE AND ORDERED.**